## The Attorney General on the relation of Edward A. Bissell v. Arora J. Burrell and others.

*Taxes: Voluntary payment: Estoppel: Injunction.* Where the electors of a township at their annual meeting have voted to raise a tax to purchase an acre of land for a public common, and it does not appear that any one opposed or voted against it, and the tax has been levied and collected without objection or protest, and the land has been conveyed to the township on the faith of such proceedings and of an order of the township board for the amount of the purchase price, and where a portion of the money has been paid over on such order, and the residue is in the hands of the township treasurer ready to be paid over, an injunction cannot lawfully be issued to restrain the payment of such residue, whether the electors had the power to vote the tax, or the officers to levy it, or not.

*Taxes: Voluntary payment: State interference.* Where such a tax has been voted, levied and paid, without so far as appears any objection from any source, the case ought to be one of very clear abuse of corporate power, or of plain excess of authority, to justify the state, in the exercise of its visitorial authority, to interfere upon a complaint which comes so late.

*Townships: Power to purchase and hold lands: Public common: Statute construed.* The power to purchase and hold lands "for the public use of the inhabitants," expressly conferred upon townships by the statute (*Comp. L. 1871*, § 637), cannot be confined to the limits of absolute necessity for governmental purposes, but embraces purchases, within a reasonable limit, for the purposes of enjoyment and the gratification of taste, such as a public common or park.

*Townships: Public park: Cities.* The purchase and control of lands for a public park cannot be said to be any more foreign to the objects and purposes of the organization of townships, than to those of villages and cities, and the right may be conferred upon one as well as the other, though the occasions be less frequent, and the desire less urgent, for its exercise.

*Public common: Precedents.* If the authority of custom were needed for the laying out of commons by townships, a custom which·began in this country with the planting of the typical New England town of Boston, and was so often followed in that part of the country, must surely be old enough, and sufficiently well recognized, even though circumstances have not required its general adoption in this state.

*Townships: Public common: Proprietary rights: Village police regulations.* The fact that the proposed township common was' within an incorporated village embraced in the boundaries of the township, and that the village police regulations were enforceable within the territory, would be no objection to the ownership of the common by the township: such regulations could no more interfere with the proprietary rights of the township, than with those of an individual.

*Submitted on briefs October 28. Decided January 6.*

Appeal in Chancery from Kalamazoo Circuit.

* This was a bill in the nature of an information, by

---

* This statement of the case was furnished by Judge Christiancy.

Byron D. Ball, the Attorney General, in behalf of the people, on the relation of Edward A. Bissell, a tax-payer of Richland, in the county of Kalamazoo, against the township treasurer and the supervisor of said township, and the trustees of the First Presbyterian society of Richland, to restrain and enjoin said treasurer and his successors from paying the sum of two hundred and twenty-two dollars and fifty cents to the said trustees of the church, being the balance of the sum of three hundred dollars, alleged to have been voted by the electors of the township at their annual meeting, to be raised by tax upon the taxable property in the township, for the purchase from said trustees of about one acre of land in the township, "for a common," as alleged in the bill, and which had been raised and collected and paid over to the treasurer,—seventy-seven dollars and fifty cents of which had been paid over by the treasurer to said trustees upon an order of the township board for the whole, and the balance of which still remained in the hands of the treasurer; and to restrain the said trustees from selling, or attempting to collect, said order; and asking a decree, that the township had no legal power or authority to vote said tax for the purpose of purchasing said real estate as a "common," or for any other purpose, and that the township board had no legal power to make the order. The bill alleges, among other reasons for such decree, the fact that the land in question was situated in the village of Richland, incorporated by the act of March 18th, 1871.

The answer of the treasurer, supervisor, and the trustees, admits and alleges the vote of the electors at their annual township meeting, for the purchase of the land, and for the raising of the tax to pay for it; the raising and collection of the tax, the issuing of the order by the township board, the payment of a part of the amount, and that the balance, as alleged in the bill, was still in the hands of the township treasurer; but insists that the whole of said three hundred dollars, so assessed, was voluntarily paid

by the tax-payers, and not under protest from any of them.

They admit that the village of Richland was incorporated as alleged, and that the land in question was situate within its corporate limits. They allege that prior to said township meeting, said Presbyterian society had proposed to the township board to sell said land to the township for the public use of the inhabitants of the township, and the proposition had been considered by the board; and that the question of so purchasing the same and raising said amount by taxes for that purpose, was by the board, submitted to, and voted upon, by the electors (at said annual meeting of 1873), with the result above stated; that in accordance with this vote, said township order was issued by the township board, and the contract with said society consummated; and that said trustees properly conveyed said land to the township, December 29th, 1873, the conveyance being recorded in January, 1874. And they submit and insist that the township had the legal right and authority to make the said purchase, and to raise the tax for the payment aforesaid; to issue the order, and to do all the other acts charged in the bill.

The following facts, stipulated and agreed upon by the attorney general and the solicitor for defendants, constitute all the evidence in the case, viz.:

"1. That at the annual township meeting of the township of Richland, in said county, held in said township in April, 1873, the question was submitted to the electors of said township, assembled at said meeting, whether the said township should purchase of the First Presbyterian Society of Richland, the common or piece of land, being about one acre, situate in the southeast corner of section fifteen, in said township; and pay therefor the sum of three hundred dollars, to be raised by tax on the taxable property of said township, in the year 1873; and that at said meeting it was voted to purchase said land and raise said sum of three hundred dollars, by a tax to be spread on the taxable property of said township, for the year 1873, with

which to pay for said real estate, for the purpose of a common or park.

"2. That said sum of three hundred dollars, so voted and for the purpose as aforesaid, was spread upon the taxable property of said township, for said year, and extended upon the assessment roll by the supervisor of said township, and that the same was collected by the treasurer of said township and is now in the treasury of said township, except the sum of seventy-seven dollars and fifty cents. And that the said sum of three hundred dollars was paid to said treasurer, voluntarily and without protest, by each and every tax-payer of said township; and that no one of the tax-payers assessed to pay any portion of said sum protested against paying the part or portion assessed to him to pay.

"3. That on the 18th day of March, 1871, the village of Richland was incorporated by the legislature of Michigan, and that said common or piece of land, situate in the southeast corner of section fifteen, is within the corporate limits of said village.

"4. That the township board of said township of Richland, on the 29th day of December, 1873, made an order in writing, by which the treasurer of said township was directed to pay to the trustees of the First Presbyterian Society of Richland the aforesaid sum of three hundred dollars; that said order was delivered to the trustees of said society, and the sum named therein demanded of the said treasurer on said December 29th, 1873; that on said 29th day of December, 1873, said treasurer paid on said order the sum of seventy-seven dollars and fifty cents, and has refused to pay any more on the same, and the balance of the money for which said order was drawn remains unpaid.

"5. That Morgan Curtis was the supervisor of said township, and Arora J. Burrell the treasurer of said township, when this suit was commenced, and that Eli R. Miller, Charles B. Brown and William Doolittle were the trustees of said First Presbyterian Society of Richland.

" 6. That said First Presbyterian Society of Richland, at the time of said annual township meeting in April, 1873, and for some time prior thereto, owned said piece and parcel of land so situate as aforesaid, in the southeast corner of section fifteen, and that the same is correctly described and bounded in the answer on file in this cause.

" 7. That on the 29th day of December, 1873, the aforesaid trustees of said First Presbyterian Society, and for and in its behalf, and duly authorized by vote of said society, executed a quit-claim deed, conveying the interest of said society to the township of Richland, and delivered the same to the supervisor of said township, for said township, and that the aforesaid order was then and there, in payment for said land, made and delivered to said trustees of said society, and the aforesaid sum of seventy-seven dollars and fifty cents paid thereon by said treasurer; and that said deed was recorded as stated in said answer, May 7th, 1874."

Decree passed for complainants, and defendants appealed.

*Isaac Marston, Attorney General,* and *Dwight May,* for the People.

*H. C. Briggs,* for defendants.

CHRISTIANCY, J.

The question of the raising of the tax for the purchase of the piece of land in question having been submitted to the electors at their annual meeting, and they having voted to raise it for that purpose, and there being nothing to show that the relator or any other elector voted against, or opposed the raising of the tax for the purpose; and the Presbyterian society having, on the faith of said vote, and of the levying of said tax, and the order of the township board for the payment to them of the money, executed and delivered to the township their deed of conveyance of the land, and all the tax-payers, upon whom or whose property it was assessed, including the relator, having voluntarily

paid the tax without protest, a part of which was paid over to the society upon the order given for the purchase, and the balance being now in the hands of the treasurer, it is very clear that, if the title to the land has vested in the township, there is no legal or equitable principle upon which an injunction can be issued to restrain the payment of the balance, whether the electors of the township had the power to vote, or the officers to levy, the tax or not. In fact, the question of the right of a majority to impose a tax against the will of a minority, or to impose a burden upon, or compel an unwilling minority to contribute to an expenditure to which they are opposed, cannot be said to arise in this case. But .the case in this respect stands, upon this record, upon nearly, if not precisely, the same ground as if these several tax-payers had voluntarily subscribed and paid the amounts of their respective taxes for this purpose to a third person agreed upon, for the use of this society, and then, after having procured, upon the faith of such action, the conveyance of the land, they had turned around and attempted to repudiate their action, and to prevent such third person from paying over the money for the land they had thus procured to be conveyed.

In my view, therefore, there is not in this case any question properly arising upon the power of taxation, but the only question is, whether the township was competent to take by grant or conveyance this land. If it was thus competent to take, the title has vested, and there is no ground for the injunction asked. Of the power or capacity of the township to take the title of this land, except so far as the question is affected by the fact that the land is situated in the village of Richland, I can see no reason to doubt.

Admitting, as I do, the correctness of the strict construction usually adopted in reference to the powers of municipal corporations: that they can exercise no powers except such as are granted by express words, or such as are fairly implied in, or *incident* to those expressly granted, or

such as are *essential* to the declared objects or purposes of the corporation, or, in the words of *Chief Justice Shaw*, in *Spaulding v. Lowell, 23 Pick., 71*, " they can exercise no powers but those which are conferred upon them by the act by which they are constituted, or such as are necessary to the exercise of their corporate powers, the performance of their corporate duties, and the accomplishment of the purposes of their association," still the capacity of a township to take the title to lands within the township, at least for the public purpose of a common or park,—which is admitted to have been the purpose here,—must, I think, be entirely clear.

Our constitution (*Art. XI., Sec. 2*) declares: " each township shall be a body corporate, with such powers and immunities as shall be prescribed by law."

*Sec. 637, Comp. L. of 1871,* declares, that " the inhabitants of each organized township shall be a body corporate, and, as such, may sue and be sued, and may appoint all necessary agents and attorneys in that behalf; and shall have power to purchase and hold real estate for the public use of the inhabitants, and to convey, alienate and dispose of the same; and to make all contracts that may be necessary and convenient for the exercise of their corporate powers, and any orders for the disposal of their corporate property which they may judge expedient." Certainly lands for a common or park are for the " public use of the inhabitants." We cannot give to this statute the construction that the township can only purchase or hold such real estate as is " *absolutely necessary* for the exercise of its governmental powers," as it is easy to see that there is no such absolute necessity for the township holding the title to any lands. The use of land, when necessary, might be acquired by lease or otherwise; and such a construction would nullify the power expressly given.

But we are next to inquire how this power or capacity is affected by the fact that this acre of land happens to be

situated within the corporate limits of the village of Rich-
land.

This village was incorporated by the act of March 18th,
1871 (*Vol. 2, Laws of 1871, p. 593*), and by the first sec-
tion of that act this village appears to be situated within
the township of Richland.

By section seven of the act it is declared : "The inhab-
itants of said village shall be liable to the operation of any
and all laws relating to the township government, except so
far as relates to laying out, altering, vacating, and con-
structing streets and highways, and the labor to be per-
formed thereon within the limits thereof."

And though there are some provisions giving some spec-
ified powers over certain other subjects than those enumer-
ated in the above section, they are very limited in number,
except those of a mere police character, and the charter
contains no such general grants of power as are usual in
city charters, and even those of many villages, but it leaves
the general mass of township powers still in force within
the limits of the village.

No judicial power whatever is given to any village tribunal
or officer, even with reference to its own ordinances or by-
laws, but the justice of the peace for the township is given
the jurisdiction of all cases arising under these, as well as
under the general laws.—*Secs. 15 and 17.* In short, for
general, and for all governmental purposes, except those
specifically named in the charter, the village is still not
only within, but constitutes an integral portion of the town-
ship, whose rights and jurisdiction are no more interfered
with by the village charter (except in the enumerated par-
ticulars), than it would be by the creation of a school dis-
trict covering the same territory included within the
village limits.

The inhabitants of the village, therefore, continue to be
inhabitants of the township, and those within, and those
without the village enjoy their township rights in common
in all matters not otherwise provided for in the charter.

I see, therefore, no ground upon which the bill or the injunction in this case can be sustained, and the decree of the court below sustaining the bill and awarding the injunction should, I think, be reversed, and the bill dismissed, with costs against the relator.

The other Justices concurred.

COOLEY, J.

This is a proceeding on behalf of the state to restrain the respondents, who are the township officers of the township of Richland, from paying from the treasury of said township the sum of three hundred dollars as the purchase price of a park or common for the public use of its inhabitants.

The record informs us that the voters of the township at their annual meeting voted to make the purchase; that a contract was made for the land, a tax levied for the amount, which has been collected, so that nothing remained to be done on the part of the township but to hand over the purchase price to the vendors at the time the state intervened by this suit.

What interest the state has in interfering in the case is not very apparent. We are not informed that any tax-payer objected to paying the tax levied for the purpose, and except that the attorney general professed to file his information at the instance of a single tax-payer, there would be nothing to indicate that any one directly concerned has, in any stage of the proceedings, objected to what has been done. The amount involved is not large, and the case ought to be one of very clear abuse of corporate power, or of plain excess of authority, before the state, in the exercise of its visitorial authority, should listen to a complaint which comes so late.

But we do not think there has been any excess of authority or any abuse of power in the case. The power to

purchase and hold lands "for the public use of the inhabitants," is expressly conferred upon townships by the statute, —*Comp. L.*, § *637;* and we know of no authority for saying that this power is to be confined to the limits of absolute necessity, and may embrace nothing for the purposes of the enjoyment of their citizens, or the gratification of their tastes. So strict a rule as would confine all expenditures to the requirements of absolute necessity, would establish distinctions between townships and cities which are neither reasonable nor just.    It is true that in this state a purchase is not often made by a township for a park or a common, but there are reasons sufficient for this in the facts that in the absence of dense settlements the need of such an open ground or common owned by or dedicated to the public is seldom felt, and when it is some one is usually in position to find his interest subserved by making the dedication.    But considerable settlements sometimes, for various reasons, abstain from availing themselves of the advantages of village or city government; and if the circumstances of a location are such as to make a public common seem desirable to the inhabitants, it would seem very ungracious, at least, for the state to deny them the privilege of purchase.

Suppose some fine natural park, embracing unusual features of beauty and attraction, to be found within the limits of a township otherwise in its appearance monotonous and uninviting, which for a small sum might be purchased for the enjoyment of its inhabitants in perpetuity: can provision for such enjoyment be considered so entirely foreign to the purposes for which townships exist, and to the powers committed to them for exercise, as to render it necessary for the inhabitants to ask and obtain special legislative permission before appropriating for themselves and their posterity the continuous benefits which such a park might afford them?    We think not.

In the *People v. The Common Council of Detroit, 28 Mich., 228,* the nature of the ownership which municipal

corporations have in their parks and commons was considered, and was declared to be analogous to the ownership of private persons.

It is true the authority to acquire must come from the state, as must all corporate powers; but where this is given in general terms, it should not be so limited by construction as to exclude purposes that are so intimately connected with the benefit of the local community as may a park or common be in some cases. It would probably not be disputed that words like those which confer upon townships the power to acquire lands, if found in a city or village charter, would constitute a sufficient grant of power; but a city is only a town with such additional authority as the wants of an urban population may render important; and the same grant of power to each should receive the same construction where the reasons for the grant, if they differ at all, can differ only in degree. And if the authority of custom were needed for the laying out of commons by townships, a custom which began in this country with the planting of the typical New England town of Boston, and was so often followed in that part of the country, must surely be old enough and sufficiently well recognized, even though circumstances have not required its general adoption in this state.

There is nothing in the objection that the common was within an incorporated village. The village was within the township, and the fact that village police regulations were enforceable within the territory was no objection whatever to the ownership of township property there. Such regulations could not interfere with the township's control of its property, any more than they could with the legitimate control of his own by an individual.

The decree appealed from must be reversed, and the bill dismissed, with costs against the relator.

The other Justices concurred.