## VELDMAN *v.* CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—CONSTRUCTION OF CHARTERS.
    A city charter must be construed as intended to create a corporation resembling the general class into which it is introduced.

2. SAME—COURTS.
    Courts may not dictate the local governmental policy of municipalities, so long as power and authority to govern, vested in board of aldermen, common council, commissioners or trustees, is exercised in a manner not contrary to law or opposed to sound public policy.

3. SAME—POWER PLANT—WISDOM OF PURCHASE—COURTS.
    Action of city commission in purchasing an additional power plant for its water and lighting system cannot be interfered with by courts merely because it may have been unwise (Grand Rapids Charter, title 8, § 27).

4. SAME—COMMISSION—JUDICIAL CONTROL.
    Legally authorized acts of a city commission are not subject to judicial control.

5. OFFICERS—GOOD FAITH—PERFORMANCE OF DUTY—PRESUMPTIONS.
   The law presumes that public officials, acting as such, act in good faith and in performance of their duty.

6. MUNICIPAL CORPORATIONS—DISCRETION OF OFFICERS—JUDICIAL INTERFERENCE.
   To warrant interposition of court of equity in municipal affairs there must be a malicious intent, capricious action or corrupt conduct, or something which shows the action of officers complained of did not arise from an exercise of judgment and discretion vested by law in them.

7. SAME—POWER PLANT—DISCRETION OF OFFICERS.
   Action of city commission in purchasing another power plant for municipal water and lighting system is within discretion conferred by statute and is conclusive (1 Comp. Laws 1929, § 2236).

8. SAME—DELINQUENT TAXES—STATES—COUNTIES — SCHOOLS AND SCHOOL DISTRICTS.
   A home rule city, so far as collection of delinquent taxes is concerned, is in effect the agent of the State, county and school districts to whom the taxes belong (1 Comp. Laws 1929, § 2230).

9. SAME—MOTIVES OF CITY COMMISSION—COURTS.
   Courts may not inquire into motives prompting act and conduct of city commission in making contract it was legally authorized to make.

10. SAME—DISCRETION OF GOVERNING BODY—PUBLIC UTILITIES.
    The governing body of a municipal corporation must exercise a business discretion in the management, operation and maintenance of the utility intrusted to its care in order to render to the public the service contemplated when the utility was acquired.

11. SAME—POWER PLANT—CITY COMMISSION—REFERENDUM.
    Contract to sell power plant to home rule city as an addition to its water and lighting system in return for release of vendors from lien for delinquent city and school taxes against the entire property of which power plant was only a part *held*, within power of city commission to make without submitting question of acquisition to electors, where cash in water works fund accrued from earnings was used (Const. 1908, art. 10, §§ 9, 12; 1 Comp. Laws 1929, §§ 2230, 2236, 2241; Grand Rapids Charter, title 8, § 27, title 9, § 19).

12. SAME—HOME RULE CITIES—COMMISSION—RECORDED VOTE — SU-
    PREME COURT.

>   Supreme Court cannot go behind recorded action and vote of
>   home rule city commission and set aside transaction because
>   of a lack of good judgment on the part of the commission
>   even if court should so find (Grand Rapids Charter, title 5,
>   § 6).

13. COSTS—PUBLIC QUESTION—POWER PLANT—MUNICIPAL CORPORA-
    TIONS.

>   In taxpayer's suit to enjoin purchase of additional power plant
>   for city's water and lighting system, no costs are allowed, a
>   public question being involved.

BUSHNELL, J., dissenting.

Appeal from the Superior Court of Grand Rapids; Submitted January 14, 1936. (Docket No. 48, Calendar No. 38,724.) Decided March 3, 1936.

Bill by George Veldman and Mary Veldman against City of Grand Rapids, a municipal corporation, and Abe Dembinsky, Inc., a Michigan corporation, to restrain the purchase of property and other relief. Bill dismissed. Plaintiffs appeal. Affirmed.

*Shelby B. Schurtz* (*Thurman B. Doyle,* of counsel), for plaintiffs.

*Ganson Taggart,* for defendant City of Grand Rapids.

*Warner, Norcross & Judd* and *Joseph Shulsky,* for defendant Abe Dembinsky, Inc.

POTTER, J. Plaintiffs, as taxpayers in the city of Grand Rapids, filed their bill of complaint to restrain the city of Grand Rapids, a municipal corporation, and Abe Dembinsky, Inc., a Michigan

corporation,. from entering into or carrying out an arrangement mentioned and set forth in the bill of complaint, claiming that as such taxpayers they were interested in the maintenance of the integrity of the several funds of the city of Grand Rapids. They seek to invoke the aid of a court of equity in what it is charged is an illegal attempt upon the part of the city to acquire property in violation of the charter and without submitting the question of its acquisition to a vote of the electors as required by the Constitution, statutes and city charter.

The facts involved are, substantially, that defendant Abe Dembinsky, Inc., a Michigan corporation, acquired by purchase at bankrupt sale the property of the Berkey & Gay Furniture Company and particularly Plant No. 1, so-called, bounded by Monroe avenue on the west, Ottawa avenue on the east, Walbridge street on the north and Mason street on the south, in the city of Grand Rapids.

On September 18, 1935, Abe Dembinsky, Inc., made a proposition in writing to the mayor and city commission of the city of Grand Rapids, which, after stating that it owned the property hereinafter mentioned, including, according to the communication, a complete, modern equipment of pumps, generators, condensers, four modern Kerr turbines, all required electrical equipment, four Heine safety boilers, coal and ash handling equipment, etc., the reproduction cost of which property and equipment as shown by an appraisal exceeded $305,000, said:

"We are willing to sell the land and buildings described on the appraisal as buildings numbered 10, 11, 11a, 11b and 12 and which land and buildings are necessary for use in connection with the power plant, together with this power producing equipment to the city water and light department for the

sum of $157,368.24 and for such price, to deliver good title to the city free and clear of any and all incumbrances whatsoever, including any and all State and county taxes levied and assessed against the premises.

"We are further willing immediately upon effecting such sale and payment of the purchase price by the city water and light department to use and employ all of the money so paid to us in promptly paying to the city of Grand Rapids and the board of education of the city of Grand Rapids all present outstanding real and personal property taxes levied and assessed against any of the premises of Berkey & Gay Furniture Company and which still remain unpaid. These taxes as we are advised are as follows:

| | |
|---|---|
| "City and school personal property taxes | $48,794.62 |
| "City and school real estate taxes | 108,573.62 |
| | "$157,368.24" |

This matter was by the city commission referred to a committee of the whole which reported that it had given the offer of Abe Dembinsky, Inc., careful consideration, had submitted to its engineers the question of the necessity of an auxiliary plant in connection with the city pumping station and the city lighting plant and the need therefor, and asked estimates by the engineers of the cost of adapting the power plant on the premises described, belonging to Abe Dembinsky, Inc., to the uses of the city system and its availability as an auxiliary plant. It reported that it appeared clear the city was in immediate need of an auxiliary plant; the plant in question could with relatively small expense be adapted to the city's needs at less cost than an independent auxiliary plant could be secured in any

other way. It recommended the proposition of Abe Dembinsky, Inc., be accepted, provided it would include conveyance also of 20 feet immediately adjoining said premises to the south, subject to an easement of the second floor running to Abe Dembinsky, Inc., its successors and assigns, and said:

"Your committee further recommends that upon delivery of proper deeds and bill of sale conveying merchantable title, that transfer be made of the sum of $157,368.24 from the waterworks account to the city general account to be disbursed to the several units, city and school, in proportion to their ownership of the same, and that tax receipts be issued to Abe Dembinsky, Inc., in payment of taxes upon the Berkey & Gay property to the same amount.

"It is understood that Abe Dembinsky, Inc., will pay all State and county taxes on the Berkey & Gay property now due and payable."

This report was signed by a committee of the whole, and was unanimously adopted.

Plaintiffs in their bill of complaint attacked the proceedings had by the city commission as violative of 1 Comp. Laws 1929, § 2241, in that the city was engaging in a business enterprise requiring an investment of money in excess of 10 cents per capita without an affirmative vote of three-fifths of the voters; that Abe Dembinsky, Inc., was in default to the city of Grand Rapids for the nonpayment of taxes; the city was prohibited from making any contract with it; the property in question sought to be acquired by the city was the acquisition of a public utility; the city was not authorized to acquire it without an affirmative vote of three-fifths of the voters; it was an attempt to pay over $150,000 of Berkey & Gay's taxes out of the waterworks funds

of the city, contrary to the charter of the city of Grand Rapids, title 9, § 19; the proceedings were void as contrary to the Constitution of 1908, art. 10, §§ 9, 12.

Plaintiffs alleged the taxes of Berkey & Gay were properly assessed; constituted a lien in favor of the city upon their property; such taxes were payable in cash and the proceedings attacked constituted a fake; the tax receipts issued by the city to Abe Dembinsky, Inc., were false tax receipts; the city had hurriedly done everything possible to carry out the contract, and asked the court to declare the arrangement made null and void and enter a decree compelling both defendants to undo whatever had already been done, to declare void the tax receipts issued, and to "by decree, order all this void monkey-business undone."

Plaintiffs also alleged the expenditure of the money was made in violation of the budget ordinance adopted by the city, and there were other charges made by plaintiffs as to the illegality of the transaction. But the above in substance and effect covers all of them.

Defendant city of Grand Rapids answered, and its answer sets forth substantially, that the city has been the owner of a water and street lighting utility and has engaged in the business of supplying water to its inhabitants and lighting the streets in public places of the city for many years; the plant has from time to time required additions, replacements, betterments and extensions, and that it has at all times exercised the right of so purchasing necessary property in connection with and for the purpose of maintenance and operation of its said plant; such purchases are not the engaging in any business enterprise within the purview of the statute, but the

carrying on of a business long since established and for many years carried on; in the securing of such betterments, replacements, extensions and improvements, it has never submitted the same to a vote of the electors nor has any claim been made that it should so do excepting where the transaction involved the raising of money by issuance of bonds, in which case the authorization of such bonds, and that alone, has been submitted to the electors under the statutes and charter; in the instant case, no bonds were required, as money available for the purpose was on hand; the provisions of the statute have no relation to an existing enterprise but to the initiation only of a new one, and that it has no application to the action taken by the city of Grand Rapids in the present case.

It denied that Abe Dembinsky, Inc., was in default to the city; admitted the question of acquiring this auxiliary plant was not submitted to the electors; alleged such submission was not required by the Constitution, statutes or charter; claimed neither the Berkey & Gay Furniture Company nor its receiver at any time operated a public utility or that the plant constituted a public utility, and alleged the securing thereof was not the purchase of a public utility; admitted the taxes in question were a lien upon the property of the Berkey & Gay Company; alleged they were paid in cash, that the waterworks as the city's own public utility paid the amount of money agreed, the balance over and above such sum being paid by Abe Dembinsky, Inc., and that it merely followed the usual business custom of offsetting a debit against a credit and avoided the useless gesture of first receiving the money and then paying it over; condemned the form of pleading of plaintiffs and the pleading of what

it claimed were immaterial and improper matters, and characterized the pleading as "impertinent and scurrilous;" denied that the action taken by the city was illegal; and alleged the plaintiffs themselves were in default to the city and were not in a court of equity with clean hands.

Defendant city affirmatively answered and claimed the city of Grand Rapids had been in possession and operation of a plant supplying water and electricity for many years; from time to time it had been necessary to make additions to and provide for expansion of the plant to afford the citizens adequate water supply and light, and to maintain said plant in an efficient condition; on or about December 14, 1933, a report was made to the city commission of the city of Grand Rapids by Charles L. Hamilton, then director of public service of the city, calling attention to the fact the city needed an auxiliary or standby plant in connection with its waterworks and street lighting, that it was then running its plant to approximate capacity and in case of any breakdown the city would be without water and without light, a copy of which report was appended to its answer; and on or about September 12, 1935, a report was made to the city commission of Grand Rapids by Peter Kammeraad, then director of public service, again calling its attention to the city's lack of reserve plant in its water supply and street lighting system, a copy of which report was annexed to its answer.

It referred to the communication received from Abe Dembinsky, Inc., of September 19, 1935, in which it was advised action would have to be taken promptly by the city as, by order of the United States district court, Abe Dembinsky, Inc., was

obliged to make some disposition of the property within a few days, and the time could not again be extended.

It alleged the city commission requested from its engineers a report as to the availability and desirability of the proposed power plant as an auxiliary to the waterworks and electric lighting system, asking that a careful survey be made both as to availability and as to value, and also the approximate cost should an independent plant be constructed; and that such a report was made, a copy of which was annexed to defendant city's answer.

It alleged all these matters were submitted to the city commissioners of the city of Grand Rapids, and that a poll was had of the commissioners present, all of whom were in favor of the transaction except one, Commissioner Green, who was absent but telegraphed his approval of the transaction; that September 24, 1935, a bill of sale and deed of the property was delivered and payment made by Abe Dembinsky, Inc., of the difference, and tax receipts were delivered by the city to Abe Dembinsky, Inc.

It alleged that by the charter of the city, title 8, § 27, it was given the express right and power to acquire, construct, own, operate and maintain waterworks and electric lighting plants, and to acquire all property, real and personal, necessary and proper therefor, and to maintain and operate the same.

It denied the judgment and discretion of the city commission of the city of Grand Rapids in this matter was subject to judicial review.

It alleged the city commission was by the charter of the city of Grand Rapids, title 5, § 6, required to keep a written or printed journal of its proceedings

which constituted a public record, and such record could not be contradicted or supplemented by parol or other evidence.

The report of the city engineer indicated one steam pumping unit was installed in 1910 and had been in service 25 years; that the second was installed in 1914 and had been in service 21 years; that these pumping units would need expensive repairs or should be replaced which would cost $190,000 each for replacement, $380,000 to replace both of them. It called attention to other things, indicating a standby plant was necessary.

Plaintiffs amended their bill of complaint in some particulars, and defendant city answered, alleging the money used for such purpose was, before being paid out, in the waterworks fund accrued from earnings and subject to use by such utility.

The city made a motion to dismiss plaintiffs' bill of complaint, which motion accompanied its answer, claiming plaintiffs' bill did not state a cause of action; the determination of the city commission as to the necessity and wisdom of providing additions to its waterworks and electric light plant, and particularly an auxiliary power plant in connection therewith, was a matter of legislative and administrative discretion and not subject to judicial review. It reaffirmed other matters above mentioned contained in its answer.

Abe Dembinsky, Inc., also answered, and attached to its answer were certain excerpts from the appraisal of Manufacturers Appraisal Company, dated August 16, 1935, relating to the power plant, buildings and equipment of Berkey & Gay Furniture Company Plant No. 1, deeded to the city of Grand Rapids, showing the reproduction cost of the property was $305,115.09, and the sound value

thereof $218,268.20. Attached also to its answer was an affidavit of the treasurer of the city showing plaintiffs were in default in the payment of personal property taxes. This answer was also accompanied by a motion to dismiss.

The matter was brought on for hearing before the court October 9, 1935; and again on October 21, 1935, upon plaintiff's petition to set aside the decree of October 14, 1935.

Attached to the settled record are the provisions of the Constitution, statutes and city charter relied upon by the respective parties.

There was decree for defendants and plaintiffs appeal.

Cities and villages are the oldest of all existing forms of government. Every city charter must be construed as intended to create a corporation resembling the general class into which it is introduced. Cities are generally controlled so far as governmental functions are concerned by a board of aldermen, common council, commissioners or trustees.

So long as the power to govern the city and control its affairs is vested by the people in local municipal officers in pursuance of law, neither this court nor any other may assume to dictate the local governmental policy of the municipality. The power and authority is vested in the commission to govern as its discretion dictates so long as its action is not contrary to law or opposed to sound public policy. So long as the city commission acts within the limits prescribed by law, the court may not interfere with its discretion. The judiciary is not charged with supervisory control over the exercise of governmental functions by the city commission of Grand Rapids. It is not the business of courts to act as

·city regulators and, unless the authority of the representatives of the citizens of Grand Rapids has been illegally exercised, their action cannot be interfered with merely because it may not seem to other persons to have been as wise as it ought to have been. *Torrent* v. *Muskegon Common Council,* 47 Mich. 115 (41 Am. Rep. 715).

The question is one of the power and authority of the city commission, the governing body of the city of Grand Rapids. If the city commission was authorized to accept the proposition made to it by Abe Dembinsky, Inc., to purchase and acquire for $157,000 the property in question and pay that sum to Abe Dembinsky, Inc., therefor, then this court may not interfere. If the city commission had legal authority to do what it did do, that ends the matter. The question of whether the commissioners acted wisely or unwisely is not for the consideration or determination of this court.

The city commissioners of the city of Grand Rapids stand in a fiduciary capacity to the city and its citizens. They act under the power conferred upon them by election by the people. If they violate the trust reposed in them by the people, the people may repudiate them as their representatives. But so long as they are legally authorized to act, their acts are not subject to judicial control.

"The security, for the faithful exercise of this discretion, is found, not in the superintendence of courts of justice, but in the individual reputations of the commissioners, in the tenure of their office, in their acting openly on the rights of others, in the face of a people, vigilant to watch and acute to discern, and in their being exposed to the overwhelming force of public opinion." *Upjohn* v. *Richland Township Board of Health,* 46 Mich. 542, 545 (41 Am. Rep. 178).

If the defendants acted officially upon a matter which by the law and the choice of their fellow-citizens was committed to their charge, it must be presumed they acted in good faith. The law presumes public officials perform their duty. In order to warrant the interposition of a court of equity in municipal affairs, there must be a malicious intent, capricious action or corrupt conduct, something which shows the action of the body whose acts are complained of did not arise from an exercise of judgment and discretion vested by law in them.

If the charter of the city of Grand Rapids is constitutional, and of this there seems to be no question, and the State has thus conferred upon the city commission the power which it exercised and left the exercise of it to the judgment and discretion of the commissioners, then their action is conclusive.* *Attorney General, ex rel. Bissell,* v. *Burrell,* 31 Mich. 25; *Upjohn* v. *Richland Township Board of Health, supra.*

The city of Grand Rapids was, so far as collection of the delinquent taxes involved was concerned, in effect the agent of the State, county, and school districts to whom the taxes to be collected would belong.† If the city collected them and released the taxpayers from liability, it was and is liable to them for the taxes collected. Defendants had a right to pay these delinquent taxes to the city of Grand Rapids in cash.

The important question is whether the city of Grand Rapids had a right to expend in round numbers $157,000 in the manner and for the purposes for which it did expend it. If the city had no right to expend the $157,000 in the manner and for the

---

* See 1 Comp. Laws 1929, § 2236.—REPORTER.
† See 1 Comp. Laws 1929, § 2230.—REPORTER.

purposes for which it was expended, then it had no power or authority to enter into and carry out the arrangement in question. If the city did have a right to expend the $157,000 in the manner and for the purposes it was expended, it had a right to purchase the property acquired by it and to pay $157,000 for it, and defendant Abe Dembinsky, Inc., had a right to sell the property to the city for that sum and to receive the money therefor and use the money for paying the taxes upon its property. If this is true, then the city and the other defendant had a right to dispense with the technical drawing of a check to Abe Dembinsky, Inc., for the purchase price of the property and its transfer back to the city by Abe Dembinsky, Inc., in payment of the taxes, and accept a conveyance of the property to the city from Abe Dembinsky, Inc., and release it from liability for the taxes against its property.

Plaintiffs contend the city had no such power. They contend that under the charter of the city of Grand Rapids it had no power or authority to make the purchase of the property in question without an affirmative vote of the people. Defendants claim the city had already acquired and engaged in the operation of a waterworks plant and system; it was regarded advisable and necessary to acquire additions and betterments thereto in order to make the plant adequate under all the circumstances.

Is the defendants' contention sustainable? It is not disputed the court may not inquire into the motives which prompted the acts and conduct of the city commission of Grand Rapids in making the contract in question any more than the court may inquire into the motives of the legislature of the State or the motives of congress in enacting legislation.

The question for the determination of the court is whether the city of Grand Rapids had the legal right to do what it did do, *i. e.,* purchase and acquire the property in question for the price and in the manner and for the purposes for which it was acquired.

Many years ago the government of the United States granted to the State of Michigan 750,000 acres of land for the purpose of constructing the Sault Ste. Marie ship canal. This grant was accepted by the State and the canal constructed, paid for and placed in operation. Then, in 1859, in the opinion of the engineers employed by the State and the board of control of the canal, including the governor, the canal was out of repair and it was necessary to put it in better order. The question was presented whether the cost of such repairs could be paid by the State under the constitutional provision prohibiting the State from being interested in internal improvements except in the expenditure of land grants. On the one hand, it was contended the State could not without violation of this provision of the Constitution make these repairs because it was, by so doing, becoming interested in an internal improvement otherwise than in the expenditure of the proceeds of land grants. On the other hand, it was contended the State had already become interested in the canal which it had constructed and placed in operation by the expenditure of the proceeds from land grants and, having legally embarked in that business by the construction and operation of the canal, the State had a right to keep the canal in repair and continue it in operation though the cost and expense thereof was defrayed by other means than by the expenditure of the proceeds of land grants. This matter was

submitted by the legislature of 1859 to the attorney general, Honorable Jacob M. Howard, who rendered an opinion that the State could make the repairs and defray the cost and expense thereof otherwise than in the expenditure of the proceeds of the lands granted to the State. House Documents No. 21, 1859.

The opinion of the attorney general, however, recommended that the bonds should, upon their face, import that they were given for the above purpose; should expressly pledge for their redemption the net proceeds of the tolls of the canal, and contain the guaranty of the State that they should be paid according to their tenor. And it was in pursuance of this opinion the bonds were issued and the canal repaired. The question of the legality of the bonds did affect their sale and led to later litigation.

In *Shryock* v. *City of Zanesville*, 92 Ohio St. 375 (110 N. E. 937), plaintiff, a taxpayer, instituted a suit to restrain the expenditure of $2,500 by the city to be paid to a competent engineer to prepare plans, specifications and estimates of cost for the erection and construction of a mechanical filtration plant for purifying the water supply of that city, upon the ground the contract was a part of a proceeding to acquire, construct, own and operate a public utility, and to authorize the making of a contract for the purposes thereof in violation of the constitutional provision which required that before a city could acquire a public utility it must submit the matter of its acquisition to the people. The court held the matter of constructing a mechanical filtration plant for the purification of water by a city which already owned and operated a waterworks system was not within the constitutional provision prohibiting the construction thereof without submitting the same to the people.

In *Chitwood* v. *Lanning,* 218 Iowa, 1256 (257 N. W. 345), the city of Oskaloosa owned a waterworks plant and the question arose whether or not the city could provide for an extension of the plant without submitting the same to a vote of the people. The court held that under the statute the trustees were authorized to pay for improvements and extensions to the plant out of its future earnings, and to secure the payment of such extensions by a pledge of the net earnings of the proposed works. This case is distinguished from the present by the language:

"The instruments creating the liens may undoubtedly be 'revenue' bonds, and other appropriate instruments. We are at a loss to know why the trustees may not exercise the powers so conferred."

This case, therefore, is not particularly different in principle from that of *Young* v. *City of Ann Arbor,* 267 Mich. 241, where this court held that the issuance of revenue bonds in pursuance of Act No. 94, Pub. Acts 1933, did not constitute a contracting of municipal indebtedness within the meaning of the Constitution.

In *City of Springfield* v. *Railway Co.,* 296 Ill. 17 (129 N. E. 580), the question involved was whether the installation of an ornamental electric lighting system consisting of 352 cast iron Corinthian columns together with the necessary wiring for a boulevard lighting system constituted a public utility. The city owned its electric lighting plant and the question was whether or not it could make this extension and improvement of its electric lighting system without a submission of the proposition to the people. The court held that the city, having duly acquired the electric lighting system, had a right to make the improvements and extensions without a submission of the same to a referendum,

and it pointed out that it would be an unreasonable construction of the Constitution and statutes of Illinois to hold that every time the city extended the service of its plant it acquired another public utility. It held that all the various lines, equipment and property used in connection with the power house and electric generators of the city constituted but one plant and one utility and that, after the improvement contemplated was constructed, the city would still own and operate but a single, indivisible utility, saying:

"It was not necessary that the ordinance for the improvement should be submitted to the electors and approved by them."

In *Indiana Service Corp.* v. *Town of Warren,* 206 Ind. 384 (189 N. E. 523), suit was instituted by the Indiana Service Corporation as a taxpayer against defendant to enjoin the latter from carrying out a contract with Fairbanks, Morse & Company for the installation of Diesel engines for its electric light plant. The question involved was whether it was necessary to submit the question of the acquisition of this property to the voters in the municipality. In disposing of the question, the court said:

"Whether, under the statute, a town may adopt municipal ownership of utilities seems to be a question of policy to be determined by an election. But, having once entered into the business, as here shown, an election is not necessary for the purpose of deciding an engineering choice as to the type of equipment that shall be originally installed, or for necessary replacements because of inefficiency or obsoleteness. The board of trustees of the town must, of necessity, be and they are authorized to exercise a business discretion in the management, operation, and maintenance of the utility intrusted

to their care. These are affirmative duties resting upon town boards, and to that end they may do the things necessary to accomplish a complete performance of the several items of the plant in order to render to the public the service contemplated when the utility was acquired.''

In *Shorts* v. *City of Seattle,* 95 Wash. 531 (164 Pac. 239), plaintiff brought suit to enjoin the issuance and sale of $60,000 in special water fund bonds, claiming it was necessary to submit the question of the issuance of these bonds to the people because their issuance constituted the acquisition of a public utility. The court said:

''This provision is obviously intended as a limitation upon any charter power to acquire, own and operate, not as an essential recital in the charter itself to confer that power. We are convinced that, since the city charter specifically authorizes the city council by ordinance to acquire, own, and operate a water system such as the city long has had, the city has power, under the plain terms of the statute, to provide by ordinance for making additions, extensions, and betterments to that system, and to issue and sell bonds payable solely from the income to be derived from the system to pay for the same without submitting either proposition to popular vote for ratification.''

In *Western New York Water Co.* v. *Whitehead, Mayor of City of Niagara Falls,* 97 Misc. Rep. 57 (160 N. Y. Supp. 1020), action was brought by the plaintiff as a taxpayer of the city to enjoin defendants from constructing a 36-inch water main from the pumping station to the city, and from issuing bonds in the amount of $72,000, face value, to provide funds for the payment of the improvement, upon the ground that it was necessary that the mak-

ing of such improvement and the issuance of such bonds should be submitted to the qualified electors of the city, which was not done. The court said:

"We cannot think it was the intention of the framers of the charter of the city, or of the legislature, to withhold from the city the power to issue bonds for an improvement of the kind now under consideration; and, if the authority to do so cannot be found in section 68, we are unable to find it expressly given in any other section or paragraph of the charter. It cannot be presumed that the city would have on hand sufficient funds available for any such purposes. It would be very unusual, and contrary to the ordinary experience of such municipalities, if sufficient available money could be realized from the surplus earnings of a water supply system to make such an expensive addition. We cannot suppose it was the intention that the city should be helpless and unable to act where the necessities of the case demanded action."

The question of issuing bonds is not involved. Defendants allege, and it is not disputed, the amount paid for the property was on hand in the waterworks fund accrued from earnings to make the purchase of the property acquired, and that the city commission acted within the scope of its authority in so making it. We cannot go behind the recorded action and vote of the city commission and set aside the transaction because of a lack of good judgment on the part of the commission even if we should so find. The entire transaction was one for the city commission to act upon. It acted and we cannot find on the record before us it violated the Constitution, statutes or charter of the city in so doing.

The decree of the trial court is affirmed, but without costs, a public question being involved.

NORTH, C. J., and FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred with POTTER, J.

BUSHNELL, J. (*dissenting*). I am unable to agree with the opinion of Mr. Justice POTTER, because of my inability to escape the conviction that the plan as disclosed by the record in this case is a mere subterfuge.

The lien of the city for unpaid taxes extended to the entire property, and the power plant in question is but a part thereof. While it may be true that the city can purchase property with waterworks funds without a vote of the people, the scheme to get around the inhibitions of the statutes and charter is too apparent to permit me to close my eyes to its real purpose nor fail to observe all the facts and circumstances connected therewith.

I know of no cogent reason why Abe Dembinsky, Inc., can solve its tax problem in this manner.

The speed with which the instant transaction was accomplished is sufficient to warrant the most minute scrutiny. Exhibit C, attached to the bill of complaint, discloses that on Tuesday, September 17, 1935, the superintendent of the municipal water and lighting plant, who had only occupied that position for about 30 days, discovered its dangerous condition and suggested an auxiliary power plant. No one in the last 25 years had become aware of this impelling need. The next morning, the power plant of the delinquent tax property was offered for sale to the city by Abe Dembinsky, Inc., the proceeds to be used for the satisfaction of $157,368.24 in delinquent taxes on the entire property. The following day the city commission decided to study the proposal and the alert water plant superintendent was directed to investigate and report. Two days later

the mayor urged the necessity of an early report. Monday, September 23d, the report was submitted but without any recommendations and the city commission at 3 p. m., sitting as a committee of the whole, approved the acceptance of the taxpayer's offer. The city commission meeting in formal session the same evening ratified the action of the committee of the whole. Thus less than seven days elapsed between the birth of the scheme and its culmination.

No matter how carefully the legal details of the transaction were thought out, the record does not warrant the conclusion that a sudden emergency existed, which affected the needs of the community sufficiently to justify such haste. It is suggested in the offer that the result might encourage the reopening of a part of the Berkey & Gay plant and thus relieve unemployment, but I discover no testimony to this effect.

The transaction taken in its entirety in the light of the background furnished by the pleadings is, to say the least, tainted with suspicious circumstances.

"Courts of equity look to the substance and effect of transactions involved in the controversy, and will not be deceived by mere words or forms, when the conduct of the parties contradicts the forms and words used as a cover to their transaction." *Thompson* v. *Andrus*, 73 Mich. 551, 560.

My brother Potter says:

"We cannot go behind the recorded action and vote of the city commission and set aside the transaction because of a lack of good judgment on the part of the commission even if we should so find. The entire transaction was one for the city commission to act upon. It acted and we cannot find on the record before us it violated the Constitution, statutes or charter of the city in so doing."

In my opinion we do not need to go behind the record or question the judgment of the commission.

The lien of the city for unpaid taxes is determined by the provisions of 1 Comp. Laws 1929, § 3429 (as amended by Act No. 38, Pub. Acts 1934 [1st Ex. Sess.]), this statute saying the lien "shall continue until payment thereof."

Taxes when due become a personal liability or obligation and the duty to pay the tax rests upon the owner of the property (section 3429, as amended); *Harrington* v. *Hilliard,* 27 Mich. 271, and *West Michigan Lumber Co.* v. *Dean,* 73 Mich. 459. The method of enforcement of such tax is by distress on goods and chattels, and if not so collected the tax is returned unpaid and the land sold. *Schaefer* v. *Woodmere Cemetery Ass'n,* 256 Mich. 332. Taxes are designed and collected for the purpose of supporting government and maintaining its activities and functions. Taxes are levied to raise money for specific purposes. Unless qualified in the context, the term "taxes" or "tax" is used in the sense of money—an exaction to be discharged in money. Money is always understood in the tax laws when nothing else is mentioned. *People, ex rel. Jones,* v. *Wright,* 34 Mich. 371; *People* v. *Seeley,* 117 Mich. 263; and 3 Cooley's Taxation (4th Ed.), § 1252. The only qualification found in the statutes is Act No. 228, Pub. Acts 1899 (1 Comp. Laws 1929, § 339), allowing payment by check for purposes of convenience.

The books contain cases which permit argument that property may be accepted in lieu of money, but these authorities are confined to special assessments, highway maintenance, etc., and not general taxes. See *Lake Superior Ship Canal R. & Iron Co.* v. *Township of Thompson,* 56 Mich. 493; *Coit* v.

*City of Grand Rapids,* 115 Mich. 493, and *Scovel* v. *City of Detroit,* 159 Mich. 95, as illustrative. See, also, 26 R. C. L. "Taxation," pp. 38–41, §§ 22–24, and *In re Petition of Auditor General,* 226 Mich. 170, and cases therein cited at pages 173, 174.

The city commission of Grand Rapids could not do by indirection that which it could not do directly, *i. e.,* relieve property of a tax lien by accepting a deed to a part thereof. The power to govern the city and control its affairs is vested in the people through their local municipal officers; neither this court nor any other court should assume to dictate the local governmental policy of the municipality. Authority is vested in the commission to govern as its discretion dictates so long as its act is not contrary to law. *White* v. *City of Grand Rapids,* 260 Mich. 267, 275, and *Marxer* v. *City of Saginaw,* 270 Mich. 256. The act of the commission was *ultra vires* and void and therefore I cannot concur in the opinion in this case.

The decree should be vacated and one entered here declaring the action of the city commission void. Defendants should be permanently enjoined from carrying out any of the terms of the commission's resolution. Costs are not ordinarily allowed in public matters, but plaintiffs, acting in the interest of the public, should have their costs against the defendant Abe Dembinsky, Inc.

Toy, J., did not sit.