# STATE OF MICHIGAN

# COURT OF APPEALS

MARSHA GARCIA,

        Plaintiff-Appellee,

v

ROSE LASKOWSKI, CHRISTOPHER
KWASNESKI, SAMANTHA FACKLER,
EILEEN UNRUH, and DAVID UNDERWOOD,

        Defendants-Appellants.

UNPUBLISHED
October 15, 2015

No. 322185
Tuscola Circuit Court
LC No. 13-027507-NO

MARSHA GARCIA,

        Plaintiff-Appellee,

v

LAURA WEILER,

        Defendant-Appellant.

No. 322189
Tuscola Circuit Court
LC No. 14-028117-NO

Before: BORRELLO, P.J., and JANSEN and OWENS, JJ.

PER CURIAM.

In these consolidated cases, defendants appeal as of right the circuit court's May 21, 2014 order denying their motion for summary disposition under MCR 2.116(C)(7) (governmental immunity).[1] For the reasons set forth in this opinion, we affirm.

## I. FACTUAL BACKGROUND

---

[1] The trial court also denied defendant's motion under MCR 2.116(C)(10) (no genuine issue of material fact). However, only governmental immunity is at issue in this appeal.

-1-

In January of 2011, plaintiff became employed at the State of Michigan Department of Health and Human Services (DHHS) Caro Center, a state hospital for adults with chronic and severe mental illness, in a position titled RN Manager 1 or RN-1. Defendants are all managerial or supervisory employees at the Caro Center. An RN-1 is responsible for providing care to patients and doing some supervision of lower level employees. As a provisional employee, plaintiff received evaluations after three, six, and twelve months on the job. The evaluations allowed supervisors to give employees scores of "unsatisfactory," "meets expectations," and "high performing." On her three and six month evaluations, plaintiff received a "meets expectations" rating for both the overall score and for various sub-categories. The evaluating supervisor testified that plaintiff's performance was similar to other new nurses, that she never expressed any concern with plaintiff, and that while she has given "high performing" scores to new nurses, a "meets expectations" is the more common score given. However, plaintiff received numerous e-mails from defendant Eileen Unruh, a supervisor, regarding plaintiff's documentation errors in various reports and charts. Nonetheless, a co-worker attested that such e-mails are common in the facility, are meant to provide guidance not criticism, and that the nurses generally refer to such e-mails as "nasty grams" due to their frequency and nature.

At a deposition, plaintiff testified that on August 13, 2011 she was helping a patient and tried to prevent the patient from falling. Plaintiff stated that she went down with the patient and was injured, requiring her to go to the hospital in Saginaw. Plaintiff testified that she returned to work on limited duty on August 25, 2011. Plaintiff also stated that when she returned to work, Human Resources gave her a list of the tasks she could and could not perform. She then filed a worker's compensation claim and gave the paperwork for the claim to Human Resources. The Caro Center's director of human resources, defendant Christopher Kwasneski, testified that all workers compensation claims would go across his desk for review. Plaintiff claimed that upon returning to limited duty, defendant Samantha Fackler, a supervisor, told plaintiff that she would not pay plaintiff to answer telephones. Another supervisor testified that plaintiff made documentation errors while on limited duty.

Plaintiff returned to active duty on November 16, 2011, at which point she was assigned a "preceptor," defendant Laura Weiler. Testimony varied regarding what exactly a "preceptor" was and specifically what Weiler's role entailed. Plaintiff claimed that her role was to assist plaintiff. The Caro Center's director, defendant Rose Laskowski, testified that the preceptor's role was also to evaluate plaintiff. Plaintiff claimed that Weiler submitted derogatory evaluations about her work without speaking to her about the concerns first. Fackler also spoke with plaintiff after plaintiff was late for work on several occasions and documented this conversation. Plaintiff also received e-mails from Unruh similar to the ones she received before her injury.

Plaintiff was summoned to a disciplinary conference on December 15, 2011 with Fackler and Kwasneski. She was given her 12-month evaluation and was told that she was being terminated. The evaluation was completed by Fackler and gave plaintiff an overall rating of "unsatisfactory." Additionally, most all of the sub-categories contained "unsatisfactory" ratings and the evaluation was filled with numerous comments regarding deficiencies in plaintiff's work, most all of which were related to documentation errors. Kwasneski stated that it is not uncommon for employees to get "meets expectations" marks at the three and six month evaluations in order to give them a chance to get acclimated to the facility, and then get

"unsatisfactory" marks at the 12-month mark due to a failure to progress. However, Laskowski stated that she would find it unusual for an employee to be terminated after receiving "meets expectations" marks at the three and six month evaluations. Laskowski also stated that no disciplinary action was ever taken against plaintiff prior to her being terminated.

Plaintiff commenced this lawsuit alleging that she was wrongfully terminated from her employment in retaliation for filing a claim under the Workers Disability Compensation Act, (WDCA) MCL 418.101 et seq.[2] Defendants ultimately moved for summary disposition arguing, in part, that plaintiff's claim was barred by governmental immunity. The trial court denied defendants' motion, finding that there was an issue of fact regarding whether defendants acted in good faith, a necessary element for qualified governmental immunity to apply. The trial court specifically cited evidence of the timing of the termination, the lack of formal discipline before the termination, and comments made by Fackler that she would not pay plaintiff for answering telephones. The court entered a written order on May 21, 2014, denying defendants' motions in both cases and defendants appeal as of right.[3]

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition is proper under MCR 2.116(C)(7) where a party enjoys immunity under the law. "In determining whether summary disposition under MCR 2.116(C)(7) is appropriate, a court considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Blue Harvest, Inc v Dep't of Trans*, 288 Mich App 267, 271; 792 NW2d 798 (2010). "If the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts, whether a claim is barred by immunity is a question for the court to decide as a matter of law." *Id*. (quotation marks and citations omitted).

## III. ANALYSIS

### i. RETALIATORY DISCHARGE UNDER THE WDCA

---

[2] Laura Weiler was listed as a defendant in the initial complaint and summons, but she was not served and the summons expired resulting in the case against her being dismissed without prejudice. Plaintiff then filed a separate complaint against Weiler, and a stipulated order was entered consolidating both causes of action in the trial court. Both actions concern the same set of operative facts and allegations.

[3] Defendants filed separate claims of appeals in both lower court dockets and this Court consolidated the appeals. *Garcia v Laskowski*, unpublished order of the Court of Appeals, June 26, 2014 (Docket No. 322185); *Garcia v Weiler*, unpublished order of the Court of Appeals, entered June 26, 2014 (Docket No. 322189).

The primary purpose of the WDCA is to "promptly deliver benefits to employees injured in the scope of their employment." *Dunbar v Mental Health Dep't*, 197 Mich App 1, 6, 495 NW2d 152 (1992). "Initially, the Act did not contain a retaliatory-discharge cause of action . . . [but] [i]n 1981 PA 200, the Legislature codified a cause of action for retaliatory discharge by amending the WDCA and adding MCL 418.301(11), which was later reclassified as MCL 418.301(13)." *Cuddington v United Health Services, Inc*, 298 Mich App 264, 272; 826 NW2d 519 (2012) (quotation marks and citations omitted). MCL 418.301(13) provides as follows:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

"A cause of action seeking damages from an employer who violates the worker's compensation act . . . sounds in tort. . . ." *Phillips v Butterball Farms Co*, 448 Mich 239, 248-249; 531 NW2d 144 (1995).

## ii. GOVERNMENTAL IMMUNITY

For lower-level governmental employees, officials and agents such as the individuals named as defendants in this suit,[4] the test set forth in *Ross v Consumers Power Co*, 420 Mich 467; 363 NW2d 641 (1984), governs whether the employee has qualified immunity under the Government Tort Liability Act (GTLA), MCL 691.1401 et seq. *Odom v Wayne County*, 482 Mich 459, 470; 760 NW2d 217 (2008). Under the *Ross* test, a governmental employee is entitled to immunity where he or she has shown the following:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

> (b) the acts were undertaken in good faith, or were not undertaken with malice, and

> (c) the acts were discretionary, as opposed to ministerial. [*Odom*, 482 Mich at 480, citing *Ross*, 420 Mich at 467.]

## iii. APPLICATION

The only *Ross* factor at issue in this appeal is whether there was an issue of fact regarding whether defendants acted in good faith or without malice in terminating plaintiff. A lack of good

---

[4] None of the named defendants argue that they are a "highest appointive executive official" of a governmental entity entitled to absolute immunity under MCL 691.1407(5) and they do not dispute that *Ross* governs in this case.

faith exists when a government employee acts with "malicious intent." *Veldman v Grand Rapids*, 275 Mich 100, 113; 265 NW 790 (1936). A government employee does not act in good faith "when the governmental employee acts *maliciously* or with a *wanton or reckless disregard of the rights of another.*" *Odom*, 482 Mich at 474 (emphasis in original). "[W]illful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Burnett v Adrian*, 414 Mich 448, 455; 326 NW2d 810 (1982).

In this case, whether defendants were entitled to governmental immunity turns on whether there was a genuine issue of material fact to support plaintiff's underlying retaliatory discharge claim. In other words, because wrongfully terminating an employee in retaliation for exercising her rights under the WDCA cannot be done in good faith or without malice, if there is an issue of fact regarding the retaliation claim, there is also an issue of fact regarding whether defendants are entitled to governmental immunity under the *Ross* factors.

To establish a prima facie WDCA retaliation suit, plaintiff was required to present evidence that: (1) she asserted a right under the WDCA—i.e. in this case, the right to claim worker's compensation, (2) that defendants knew that plaintiff asserted a protected right, (3) that defendants took an employment action adverse to plaintiff, and (4) that the adverse employment action and plaintiff's assertion or exercise of a right afforded under the WDCA were causally connected. *Cuddington*, 298 Mich App at 275.

With respect to the last element, causation, a plaintiff may either present direct or circumstantial evidence in support of her claim. *Id*. at 275-273. In the context of employment discrimination, "direct evidence" has been defined as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). Stated differently, "[i]n the retaliation context, direct evidence of retaliation establishes without resort to an inference that an employer's decision to take an adverse employment action was at least in part retaliatory." *Cuddington*, 298 Mich App at 276.

Because "[r]arely will an employer openly admit having fired a worker in retaliation for exercising a right of employment," a plaintiff may present circumstantial evidence to establish a "rebuttable prima facie case of retaliation" and shift the burden "to the defendant to articulate a legitimate, nondiscriminatory reason for its action." *Id*. at 276-277. "A plaintiff can establish that the employer's proffered reasons for the adverse employment action qualify as pretextual by demonstrating that the reasons (1) had no basis in fact, (2) were not the actual factors motivating the decision, or (3) were insufficient to justify the decision." *Id*. at 277. A plaintiff must present evidence from which a fact-finder could conclude that retaliation was a motivating factor. *Id*. Mere temporal proximity between the protected activity and adverse employment action is insufficient. *West v Gen Motors Co*, 469 Mich 177, 186; 665 NW2d 468 (2003).

In this case, although there was no direct evidence of retaliation, there was evidence that would allow a trier of fact to find that defendants knew that plaintiff suffered a work-related injury, that she sought worker's compensation benefits, and that her request for worker's compensation benefits was a motivating factor in the termination decision. *Cuddington*, 298 Mich App at 277. Plaintiff proffered the affidavit of a co-worker who testified that the e-mails

plaintiff received, which defendants argue show her poor track record, were common place at the Caro Center. Plaintiff submitted performance evaluations from before her injury that showed satisfactory progress and no complaints. These evaluations showed that, at six-months, plaintiff was a satisfactory employee, yet, less than six months later and after her injury, defendants viewed her performance as so poor that it warranted termination. Plaintiff also submitted depositional testimony establishing that the supervisor who filled out the first two evaluations considered her progress equal to that of other new RNs and that the Caro Center director considered it unusual for an employee to be fired after receiving satisfactory ratings at the three and six month intervals. Plaintiff also provided testimony that Weiler wrote her up without her knowledge and did not discuss the issues with her before doing so. In addition, plaintiff testified that when she returned to restricted work following her injury, one of her supervisors stated that she was not going pay her to sit and answer telephones. This evidence is not direct evidence that plaintiff was terminated because she filed for worker's compensation benefits, but it does support an inference to that effect. Reasonable minds could conclude that plaintiff's termination was motivated in part because she sought worker's compensation benefits. *Id*.

In arguing that the trial court erred in denying their motion for summary disposition, defendants cite evidence to show that it was plaintiff's poor performance that led to her termination. However, at the summary disposition stage, issues involving the weight of the evidence and the credibility of witnesses are to be left to the trier of fact. See e.g. *Skinner v Square D Co*, 445 Mich. 153, 161; 516 NW2d 475 (1994) (a trial court may not make factual findings or weigh credibility in deciding a motion for summary disposition). Here, plaintiff presented a sufficient amount of evidence that a trier of fact needed to weigh against the evidence proffered by defendants. Indeed, if a trier of fact were to believe plaintiff's version of the facts, including her testimony that her supervisor did not want to pay her to sit and do office work, the trier of fact could conclude that defendants' actions in terminating plaintiff were motivated at least in part by a retaliatory animus. *Cuddington*, 298 Mich App at 277. Because a finding that retaliatory animus was a motivation for terminating plaintiff's employment would constitute an absence of good faith on the part of defendants, defendants would not be entitled to qualified governmental immunity. Alternatively, a fact-finder could conclude that, based on defendants' evidence, plaintiff was terminated for legitimate deficiencies in her performance. Such a finding would support that defendants acted in good faith and were entitled to qualified governmental immunity.

Defendants' argument that no factual dispute exists, assumes that plaintiff would be required to prove her case with direct evidence of a retaliatory animus or by direct evidence of an absence of good faith. However, as previously noted, plaintiff is not required to proffer direct evidence of retaliatory animus because "[r]arely will an employer openly admit having fired a worker in retaliation for exercising a right of employment." *Cuddington*, 298 Mich App 276. Rather, the circumstantial evidence viewed in a light most favorable to plaintiff, leaves open a genuine issue of material fact regarding whether defendants acted with a retaliatory animus and an absence of good faith or with malice.

## IV. CONCLUSION

In sum, because there remained issues of fact as to whether defendants terminated plaintiff with retaliatory animus in violation of the WDCA, there remained issues of fact as to

whether defendants acted in good faith or without malice and thereby entitled to qualified governmental immunity. The trial court did not err in denying defendants' motion for summary disposition.

Affirmed. Plaintiff having prevailed, may tax costs. MCR 7.219(A). Jurisdiction is not retained.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Donald S. Owens