WAYNE COUNTY PROSECUTOR v WAYNE COUNTY BOARD OF COMMISSIONERS

WAYNE COUNTY TREASURER v WAYNE COUNTY BOARD OF COMMISSIONERS

WAYNE COUNTY CLERK v WAYNE COUNTY BOARD OF COMMISSIONERS

WAYNE COUNTY REGISTER OF DEEDS v WAYNE COUNTY BOARD OF COMMISSIONERS

WAYNE COUNTY DRAIN COMMISSIONER v WAYNE COUNTY BOARD OF COMMISSIONERS

Docket Nos. 43365, 43676, 43488, 43720, 43569. Submitted June 20, 1979, at Detroit.—Decided October 15, 1979.

Plaintiffs, the prosecuting attorney, treasurer, clerk, register of deeds, and drain commissioner of Wayne County, brought actions for declaratory judgment and injunctive relief against the Wayne County Board of Commissioners, the Wayne County Board of Auditors, the Wayne County Civil Service Commission and the "Task Force" (a group of nonelected individuals designated by the Ways and Means Committee of the Wayne County Board of Commissioners). These actions sought to enjoin defendants from instituting reductions in the 1978-79 budget of each plaintiff equivalent to a 15% reduction in their personnel costs. Plaintiffs urged that the reduced budget levels would render them unable to carry out their statutorily mandated functions. The Wayne Circuit Court, Allen C. Miller, J., found, after hearing extensive proofs, that the fixed percentage scheme adopted by defendants to compute the reductions was arbitrary and capricious because it did not take into consideration priori-

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 192.

[2, 4, 5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 579 et seq., 581.

[6] 5 Am Jur 2d, Appeal and Error § 772.

[7, 8, 9] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 581.

ties between state mandated and other functions. The trial court further found that if the adopted budgets were implemented all of the plaintiffs, except the register of deeds, could fulfill their statutory duties. Plaintiffs, except plaintiff register of deeds, appeal. Defendants cross appeal, alleging that the separation of powers doctrine precludes judicial review of their budgetary decisions. Defendants also appeal from the order of injunctive relief issued with respect to plaintiff register of deeds. *Held:*

1. Judicial review of appropriation decisions of county boards of commissioners is limited in scope, but such review will be undertaken where a county board fails to perform the duties imposed by the legislature or state constitution.

2. County boards of commissioners must appropriate sums sufficient to allow county executive officers to carry out the duties and obligations which have been statutorily imposed upon them by the Legislature.

3. Discretionary appropriations by county boards of commissioners are subject to judicial review only where the action of the county board is so arbitrary and capricious as to evidence a total lack of discretion.

4. The uniformly applied fixed percentage method of budget reduction adopted by the county board of commissioners was not arbitrary and capricious, since the record demonstrates that the board believed that all funded services were important enough to be treated equally.

5. County boards of commissioners must appropriate the funds necessary to permit county executive officers to carry out their statutorily mandated duties at a serviceable level. A serviceable level is not the optimal level, but is rather the level of funding which permits the duties to be carried out in a barely adequate manner.

6. Review of the trial court's findings is *de novo.* The trial court's findings will not be disturbed unless the Court of Appeals is convinced that it would have arrived at a different result had it been in the position of the trial court.

7. The reductions in the budgets of the clerk, treasurer and drain commissioner did not result in funding below the serviceable level, since such reductions could be achieved by the elimination of unfilled previously budgeted positions.

8. The reduction in the budget of the register of deeds resulted in funding below the serviceable level, since such reduction would require elimination of six filled positions in a department that was also chronically behind in its duties and

would thereby cause matters in that department to fall further behind.

9. The reduction in the budget of the prosecuting attorney resulted in funding below the serviceable level. Such reduction would require the elimination of 18 assistant prosecuting attorney positions in a department that is already carrying one of the highest caseloads per assistant prosecutor of any major prosecuting staff in the country and that is already losing some cases because of excessive caseloads of its assistant prosecutors.

Affirmed in part, reversed in part and remanded.

1. COUNTIES — APPROPRIATIONS — JUDICIAL REVIEW.

Judicial review of decisions of county boards of commissioners relative to appropriations is limited in scope, but such review will be undertaken where a county board fails to perform the duties imposed by the Legislature or state constitution.

2. COUNTIES — APPROPRIATIONS — STATUTORY OBLIGATIONS.

County boards of commissioners must appropriate sums sufficient to allow county executive officers to carry out the duties and obligations which have been statutorily imposed upon them by the Legislature.

3. COUNTIES — APPROPRIATIONS — DISCRETIONARY APPROPRIATIONS — JUDICIAL REVIEW.

Judicial review of discretionary decisions on appropriations of county boards of commissioners will not be undertaken except where the action taken by the county board is so capricious and arbitrary as to evidence a total failure to exercise discretion.

4. COUNTIES — APPROPRIATIONS — BUDGETARY REDUCTIONS — METHOD.

The reduction of the budgets of all county departments by a uniformly applied fixed percentage of each department's personnel costs is not an arbitrary and capricious act by a county board of commissioners where the record demonstrates that the board believed that all the funded services were important enough to be treated equally.

5. COUNTIES — APPROPRIATIONS — JUDICIAL REVIEW.

County boards of commissioners must appropriate the funds necessary to permit county executive officers to carry out their statutorily mandated duties at a serviceable level, that being the level of funding which permits the duties to be carried out in a barely adequate manner at least.

6. APPEAL AND ERROR — DECLARATORY JUDGMENTS — COUNTY APPRO-
PRIATIONS — DE NOVO REVIEW.

The Court of Appeals reviews *de novo* actions seeking a declara-
tory judgment and will not disturb the findings of the trial
court unless it is convinced that it would have arrived at a
different result had it been in the position of the trial court.

7. COUNTIES — APPROPRIATIONS — COUNTY CLERK — COUNTY TREA-
SURER — COUNTY DRAIN COMMISSIONER.

Reductions by a county board of commissioners of the budgets of
the clerk, treasurer and drain commissioner did not result in
insufficient funding where said budgetary cuts could be
achieved by the elimination of positions which had been previ-
ously budgeted, but which had remained unfilled.

8. COUNTIES — APPROPRIATIONS — REGISTER OF DEEDS.

The action of a county board of commissioners in reducing
appropriations so that six filled positions in the office of the
register of deeds would be required to be eliminated constitutes
inadequate funding where the office of the register of deeds is
already seven months behind in posting deeds and other con-
veyances and is three weeks behind in opening mail and where
the loss of the six employees would cause matters to fall
further behind.

9. COUNTIES — APPROPRIATIONS — PROSECUTOR.

The action of a county board of commissioners in reducing
appropriations so that 18 assistant prosecutor positions would
be required to be eliminated from a prosecutor's office, an office
that already has one of the highest caseloads per assistant
prosecutor of any major prosecuting staff in the country and
that is already losing some cases because of the inability of
assistant prosecutors to adequately prepare for trial, constitutes
inadequate funding, such that the prosecutor would be unable
to carry out his statutorily mandated duties.

*James F. Finn* and *Mark S. Michael,* for plaintiff
Wayne County Clerk and plaintiff Wayne County
Register of Deeds.

*Burgoyne, Kaufman, Roche & Ward, P.C.* (by
*Bert Burgoyne* and *David W. Berry),* for plaintiff
Wayne County Drain Commissioner.

*William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, *Terrance K. Boyle,* Deputy Chief, Criminal Division, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for plaintiff Wayne County Prosecutor.

*George H. Cross,* Corporation Counsel, and *James W. Quigly,* Assistant Corporation Counsel, for defendants.

*White, Spaniola, Knudsen, Stariha & Potuznik, P.C.* (of counsel: *Henry J. Sefcovic* for Bay County, *Peter A. Cohl* for Ingham County, *Jon DeWitt* for Kent County, *Paul E. Braunlich* for Monroe County, *William S. Bovill* for Saginaw County, and *Robert E. Guenzel* for Washtenaw County) for Amicus Curiae Muskegon County.

Before: BASHARA, P.J., and D. E. HOLBROOK, JR. and J. C. DANER,* JJ.

PER CURIAM. Plaintiffs sought declaratory and injunctive relief in the Wayne County Circuit Court from budgetary reductions adopted by the Wayne County Board of Commissioners for fiscal year 1978-1979. The gravamen of the complaints was that implementation of the adopted budget would render the plaintiffs unable to perform the functions of their offices as mandated by the constitution and laws of the State of Michigan. These cases were consolidated and heard together.

The plaintiffs are elected executive officers of Wayne County. The prosecutor, clerk, treasurer and register of deeds are constitutional officers pursuant to Const 1963, art 7, § 4. The drain commissioner is a statutory officer pursuant to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

MCL 280.21; MSA 11.1021. The defendants are the Wayne County Board of Commissioners, Wayne County Board of Auditors, Wayne County Civil Service Commission, and the "Task Force" (a group of nonelected individuals designated by the Ways and Means Committee of the Wayne County Board of Commissioners). Each of the defendants played a significant part in the formulation of the budget.

The defendants originally prepared and adopted a budget for fiscal year 1978-79 which included cuts for most county departments. Notwithstanding these reductions, the budget reflected an approximate 15 million dollar deficit.

On November 17, 1978, the Michigan Municipal Finance Commission ordered the county to take immediate steps to eliminate the deficit which had accumulated over several years. The budgetary process was reopened, and proceeded with the object of eliminating the county's deficit. All department heads, including the plaintiffs, were afforded an opportunity to be heard during the budgetary process. Following a preliminary budgetary phase, the board of auditors went through the various departmental requests and made certain deletions. Even with these reductions, however, there were insufficient revenues to retire the accumulated deficit. Consequently, the board of auditors recommended a system of "mandatory credits" to the board of commissioners. The mandatory credit amounted to a 15% reduction in personnel services for each of the county's departments.

The board of commissioners accepted a modified version of the plan. Consequently, the commissioners requested that all department heads, including the plaintiffs, submit a plan to effect the equiva-

lent of a 15% reduction in personnel costs. At this time, the commissioners also ordered their financial advisor to personally make budget cuts "for any department which failed to submit any plan or a totally viable plan".

Among the plaintiffs, only the register of deeds presented a plan to effect the reductions, but the plan was rejected because it was premised on increased revenues being derived from the register of deeds' Tract Index Department. The other plaintiffs either ignored the request to submit a budget effectuating the cuts or responded that no further deletions could be made if they were to carry out their statutorily mandated functions. In the absence of viable plans to effect the budget reduction, the county's fiscal advisor submitted his own plans to the board of commissioners. Each of the plans concerning the plaintiffs were adopted by the commissioners, resulting in this action.

The trial court[1] found, upon extensive proofs, that the board of commissioners, as the county's legislative branch of government, was not without restrictions upon its power with regard to the administration of functions mandated by the state Legislature. The trial court further found that the scheme adopted by the commissioners to effect the budget cuts was arbitrary and capricious because it did not take into consideration priorities between state mandated and other functions. The court ultimately held that if the adopted budget was implemented, all of the plaintiffs except the register of deeds could fulfill their statutory duties. From this determination, the plaintiffs, excluding the register of deeds, appeal. The defendants also appeal, contending that the separation of powers

---

[1] The Supreme Court appointed visiting Judge Allen C. Miller of the 23rd Judicial Circuit to hear this case.

doctrine precludes judicial review of their budgetary decisions.

It is elementary that the separation of powers doctrine mandates the preservation of the legislative, executive and judicial branches of government as entities distinct from one another, Const 1963, art 3, § 2. The judiciary will not interfere with the discretionary actions of legislative bodies. As noted by our Supreme Court in *Detroit v Circuit Judge of Wayne County,* 79 Mich 384, 387; 44 NW 622 (1890):

> "It is one of the necessary and fundamental rules of law that the judicial power cannot interfere with the legitimate discretion of any other department of government. So long as they do no illegal act, and are doing business in the range of the powers committed to their exercise, no outside authority can intermeddle with them".

This, however, does not mean that all appropriations decisions of the boards of commissioners are exempt from judicial review. Whenever a board fails to perform duties imposed by the state Legislature or constitution, the courts will not hesitate to order performance. *Stowell v Board of Supervisors for Jackson County,* 57 Mich 31; 23 NW 557 (1885), *Wayne County Jail Inmates v Wayne County Sheriff,* 391 Mich 359; 216 NW2d 910 (1974), *King v Director of the Midland County Department of Social Services,* 73 Mich App 253; 251 NW2d 270 (1977). As Justice KAVANAGH wrote in *Wayne County Jail Inmates, supra,* 364:

> "While it is true that local boards of commissioners have legislative powers in some matters, in carrying out the duties imposed upon them by the Legislature their function is executive or administrative, and they have no legislative function in the premises."

We cannot hold that every appropriations decision rendered by the county boards is exempt from judicial review. To do so would be to ignore the mandates of the Legislature. Where the Legislature has statutorily imposed on the county executive officers various duties and obligations, the county boards of commissioners must budget sums sufficient to allow the executive officers to carry out their duties and obligations.

This is by no means a novel or unwarranted extension of existing law. In *King, supra*, 260, we held that the Midland County Board of Commissioners did not have unfettered discretion to determine the sum to be appropriated for the maintenance of various welfare services within the county. We noted that Michigan law requires the county to maintain a general assistance program[2] and held:

"If the amount of the appropriation was completely within the discretion of the board, the board could relieve itself of its responsibility of maintaining the general assistance program simply by appropriating insufficient funds."

Just as every appropriations decision is not exempt from judicial review, not all budgetary decisions made by the county boards are reviewable. We are fully cognizant of the limitations placed upon our power of review by the separation of powers doctrine. Furthermore, we welcome these limitations as we have no desire to become the final arbiter of all budgetary disputes. The judiciary will not involve itself with the truly discretionary appropriations decisions of a county board, unless the action taken is so capricious or arbi-

[2] MCL 400.55; MSA 16.455.

trary as to evidence a total failure to exercise discretion. *Veldman v Grand Rapids,* 275 Mich 100; 265 NW 790 (1936). Thus, in *Brownstown Twp v Wayne County,* 68 Mich App 244; 242 NW2d 538 (1976), *lv den* 399 Mich 831 (1977), we refused to order the Wayne County Board of Commissioners to allocate funds to operate a road patrol, because there was no statutory or common law duty requiring the sheriff to perform such a service, nor any proof that the board's decision not to fund the road patrol was a product of caprice or arbitrariness. By necessary implication, however, had the Court found such a duty, it would have ordered the commissioners to fund the road patrol.

In the instant case, the trial court concluded that the defendant board of commissioners acted arbitrarily and capriciously in adopting a scheme whereby all county departments were required to reduce their budgets by an amount equivalent to 15% of their personnel costs. We disagree. Our review of the record leads us to the conclusion that serious thought was given by the defendant board in determining the most equitable and efficacious means of implementing the budget cuts. The board genuinely believed that all of the services it was funding were important enough so that all should be treated alike. Our determination that the defendant board did not act arbitrarily or capriciously, however, does not resolve the problem of whether the board has provided the county executive officers sufficient levels of funding to fulfill their statutorily mandated functions.

In *Wayne Circuit Judges v Wayne County,* 383 Mich 10; 172 NW2d 436 (1969), Justice Black's opinion speaks of the inherent powers of the courts to make certain that the courts function "serviceably" as a co-equal branch of Michigan's

government. In that case on rehearing,[3] our Supreme Court held that the courts could order Wayne County to provide the Wayne County Circuit Court with critically needed law clerks and probation officers. We adopt "serviceability" as the standard to be applied in determining whether the board of commissioners has unlawfully underfunded the county executive officers so that they are unable to fulfill their statutory obligations. Serviceability must be defined in the context of Justice BLACK's opinion, *i.e.* "urgent", "extreme", "critical", and "vital" needs. A serviceable level of funding is the minimum budgetary appropriation at which statutorily mandated functions can be fulfilled. A serviceable level is not met when the failure to fund eliminates the function or creates an emergency immediately threatening the existence of the function. A serviceable level is not the optimal level. A function funded at a serviceable level will be carried out in a barely adequate manner, but it will be carried out. A function funded below a serviceable level, however, will not be fulfilled as required by statute.

We now turn to the factual determination which must be made in relation to each of the plaintiffs' departments. This Court reviews actions seeking declaratory judgment *de novo.* However, the findings of the trial court will not be disturbed unless this Court is convinced it would have arrived at a different result had it been in the position of the trial court. *Biske v City of Troy,* 381 Mich 611; 166 NW2d 453 (1969), *Garb-Ko, Inc v Carrollton Twp,* 86 Mich App 350; 272 NW2d 654 (1978).

We agree with the trial court's conclusion that

---

[3] Justice Black's opinion was adopted by the majority in *Wayne Circuit Judges v Wayne County (On Rehearing),* 386 Mich 1; 190 NW2d 228 (1971), *cert den* 405 US 923; 92 S Ct 961; 30 L Ed 2d 794 (1972).

the clerk, treasurer, and drain commissioner are serviceably funded, and can fulfill their statutory obligations within the confines of their reduced budgets.[4] Despite the budgetary reductions, the clerk, treasurer and drain commissioner lost only one, two and two filled positions respectively. Most of the budget losses experienced by these plaintiffs were absorbed by the elimination of positions budgeted in previous fiscal years but not actually filled due to a hiring freeze adopted by the county in 1975.

We also agree with the trial court's conclusion that the 1978-79 fiscal year budget adopted by the commissioners does not provide a serviceable level of funding for the register of deeds.[5] Under the 1978-79 budget, the register of deeds would lose six filled positions. At the time this suit was heard, the Tract Index Division of the register of deeds was seven months behind in posting deeds and other conveyances. There was a three week delay in that office in opening mail. With the loss of the six employees, the Tract Index Division would begin to fall behind at the rate of one day for each five working days. This would hinder the transfer of properties and cause havoc with the obtaining of title insurance and abstracts. The delay in receiving and posting transfers of real estate would very likely result in the loss of some $240,-000 in revenues from the title insurance companies.

We disagree, however, with the trial court's conclusion that the 1978-79 budget provides suffi-

---

[4] The duties of the clerk, treasurer and drain commissioner are enumerated in MCL 50.61 *et seq.;* MSA 5.831 *et seq.,* MCL 48.35 *et seq.;* MSA 5.681 *et seq.,* and MCL 280.21 *et seq.;* MSA 11.1021 *et seq.* respectively.

[5] The duties of the register of deeds are enumerated in MCL 53.89 *et seq.;* MSA 5.981 *et seq.*

cient sums to allow the prosecutor to perform his mandated functions serviceably.[6] The trial court's conclusion was largely premised on crime statistics showing a reduction of crime in Wayne County. However, this reduction did not result in a corresponding decrease in the volume of work which had to be performed by the prosecutor and his staff.

At the time this suit was instituted, the average assistant prosecuting attorney in Wayne County was carrying a caseload of approximately 140 felony cases. At 122 felonies per caseload, Wayne County would have a higher per attorney caseload than 99% of the major prosecuting staffs in the country. Testimony indicated that at 140 felonies per caseload, assistants were losing some cases because of an inability to adequately prepare for trial caused by the volume of their workloads. The proposed reduction could mean that each assistant's caseload would increase to 163 felonies.[7]

The budget as adopted for fiscal year 1978-1979 would result in the loss of 18 assistant prosecuting attorneys. It is our opinion that such a loss would render the prosecutor unable to perform the statutorily mandated functions of his office, thereby failing to meet the serviceability standards heretofore defined in the opinion.

The prosecutor does have a duty to set his priorities before contending that he is being funded below a serviceable level. We note that the Wayne County Organized Crime Task Force and the prosecutor's Repeat Offenders' Bureau have lower per attorney caseloads than the other departments in the prosecutor's office. While the

[6] The duties of the prosecutor are enumerated in MCL 49.153 *et seq.*; MSA 5.751 *et seq.*

[7] Our review of the record does not reveal the disposition of misdemeanors, many of which are handled by the prosecutor's office.

prosecutor has a duty to prosecute the violations of the law by criminal syndicates and repeat offenders, there is no duty to maintain separate departments to do this work. The Wayne County Board of Commissioners, in conjunction with the prosecutor, can review these areas to ascertain if some of the positions may be eliminated. It must be kept in mind at all times, however, that the functions of the Organized Crime Task Force and the Repeat Offenders' Bureau must still be carried out. If the elimination of any positions in these units will render the prosecutor unable to fulfill his statutory mandate to bring to the bar of justice such alleged offenders, the board of commissioners may not make the prosecutor impotent in this regard.

It occurs to us that both the Organized Crime Task Force and the Repeat Offenders' Bureau are highly successful units eminently worthy of continued funding. However, within the parameters of the foregoing paragraph, this is a legislative judgment which the board of commissioners, and not the Court, has the power to make.

We also note that the prosecution of consumer protection cases is only discretionary by statute.[8] The Wayne County Board of Commissioners may also examine this area, in conjunction with the prosecutor, to ascertain if savings might be effected.

We are not unmindful of Wayne County's dismal economic condition. However, as Judge, now Justice, Levin stated in *Wayne Circuit Judges v Wayne County,* 15 Mich App 713, 728-729; 167 NW2d 337 (1969):[9]

---

[8] MCL 445.915; MSA 19.418(15).

[9] Judge, now Justice, Levin's opinion was ultimately affirmed in *Wayne County Circuit Judges (On Rehearing), supra,* and his reasoning was left undisturbed.

"We think that before the county should be heard to interpose financial inability to provide the required funds it must demonstrate not only that there is a shortage of funds but also that such shortage is attributable to obligations having the same rank and priority in terms of legislative mandate upon the board of supervisors as do appropriations for probation officers, law clerks and a judicial assistant. For all that appears on this record the county's financial embarrassment may be attributable to the incurment of liabilities and the making of expenditures of a discretionary nature and not because of expenditures required by the legislature. Until it is made to appear that the county's financial embarrassment cannot be alleviated by the elimination of discretionary expenditures, there is no need to consider the contentions of the parties as to whether the county is in fact short of funds and how, if the kind of shortage referred to in opinions of the attorney general were shown to exist, the financial resources of the county would be apportioned." (Footnotes omitted.)

Affirmed in part, reversed in part, and remanded for proceedings not inconsistent with this opinion.