POLICE OFFICERS ASSOCIATION OF MICHIGAN v OAKLAND COUNTY

Docket No. 69798. Submitted January 5, 1984, at Lansing.—Decided June 18, 1984. Leave to appeal applied for.

　　On December 2, 1982, the Oakland County Board of Commissioners adopted a budget for 1983 which reduced the number of Oakland County Sheriff's Department road patrol positions from 45 to 25. The budget was adopted after Oakland County and the Police Officers Association of Michigan (POAM), the union representing the employees of the Oakland County Sheriff's Department, had negotiated unsuccessfully for a new collective-bargaining agreement. The previous collective-bargaining agreement between the parties, although beyond its expiration date, was to remain in effect while a new agreement was negotiated. That bargaining agreement provided that POAM members could be separated from county employment because of curtailment of work or lack of funds. Following the unsuccessful negotiations between the parties, POAM filed an amended petition for compulsory arbitration with the Michigan Employment Relations Commission. After the adoption of the 1983 budget, POAM, later joined by Johannes Spreen, Oakland

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law § 306 *et seq.*
　20 Am Jur 2d, Courts §§ 65, 66.
　72 Am Jur 2d, States, Territories, and Dependencies §§ 40, 41.
[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 579.
　63A Am Jur 2d, Public Funds §§ 37, 59.
[3, 6] 48A Am Jur 2d, Labor and Labor Relations § 1773.
[3, 4, 7, 8] 48A Am Jur 2d, Labor and Labor Relations § 1770.
　Validity and construction of statutes or ordinances providing for arbitration of labor disputes involving public employees. 68 ALR3d 885.
[5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 581.
[6] 48A Am Jur 2d, Labor and Labor Relations § 1769.
[6, 7] 63A Am Jur 2d, Public Officers and Employees § 292.
　What constitutes unfair labor practice under state public employee relations acts. 9 ALR4th 20.

County Sheriff, filed a complaint in Oakland Circuit Court alleging that defendants, Oakland County, the Oakland County Board of Commissioners, Daniel T. Murphy, the Oakland County Executive, and C. Hugh Dohany, the Oakland County Treasurer, had unilaterally altered the conditions of employment set forth in the rules of the Oakland County Merit System, requesting that defendants be temporarily and permanently enjoined from effecting the scheduled layoffs, and seeking a declaratory judgment as to whether the layoffs violated the Oakland County Merit System Rule 9. The court, James S. Thorburn, J., denied plaintiffs' request for a permanent injunction, and following oral argument, the court dismissed plaintiffs' amended complaint, ruling that neither the state constitution, the applicable statute, the collective-bargaining agreement, nor the pending arbitration compelled the board of commissioners to appropriate funds for the road patrol. Plaintiffs appeal. *Held:*

1. The trial court, by terminating its inquiry with a finding that the board had discretion to eliminate the road patrol positions, failed to address the pertinent issue, *i.e.,* whether the board of commissioners abused its discretion when it eliminated the 20 road patrol positions. The case is remanded to the trial court to determine whether the board abused its discretion.

2. During the pendency of an arbitration proceeding, a party may not unilaterally change existing wages, terms, or conditions of employment. Because budget appropriations are not a proper subject for collective bargaining, a restriction on the board's power to appropriate funds could not have been made a condition of employment. The board of commissioners has authority under its collective-bargaining agreement with POAM to lay off road patrol deputies where the county budget failed to appropriate funds for the affected positions.

Remanded.

M. J. KELLY, J., concurred with the majority's opinion in concluding that the trial court failed to consider whether the board of commissioners abused its discretion when it eliminated the road patrol positions but dissented as to the majority's finding that defendants were not prohibited from effecting the layoffs during the pendency of the compulsory arbitration proceedings. He believes that the dispute in this case is whether the commissioners unilaterally changed a condition of employment during arbitration by eliminating county employees for a reason other than not having the funds to pay the salaries of those employees. He would remand the case for a determination by the trial court as to whether the board's

elimination of the 20 road patrol positions was properly based on lack of funds and would order consideration of the county budget as a whole to determine whether the budget as adopted evidences an arbitrary or capricious attempt on the part of the board to eliminate road patrol positions for reasons that are not justified by overall county budgetary needs. He further states that if there was no "lack of funds" within the meaning of that phrase as used in Rule 9 of the Oakland County Merit System Rules, the trial court should order reinstatement of the laid-off employees.

OPINION OF THE COURT

1. CONSTITUTIONAL LAW — SEPARATION OF POWERS — LEGISLATIVE ACTION — JUDICIAL INTRUSION.

The separation of powers doctrine mandates the preservation of the legislative, executive, and judicial branches of government as entities distinct from one another; thus, in order to warrant judicial intrusion into legislative action, the legislative action must be so capricious or arbitrary as to evidence a total failure to exercise discretion (Const 1963, art 3, § 2).

2. COUNTIES — APPROPRIATIONS — LEGISLATIVE ACTION — COURTS.

The power to appropriate money is exclusively legislative in character, and in order for a court to interfere in a county's exercise of its discretion in appropriating funds, the county's action must be so capricious or arbitrary as to evidence a total failure to exercise discretion.

3. LABOR RELATIONS — POLICE AND FIRE DEPARTMENTS — COMPUL-SORY ARBITRATION.

Compulsory arbitration of labor disputes in municipal police and fire departments extends only to mandatory subjects of collective bargaining under the public employees relations act (MCL 423.201 et seq., 423.234 et seq.; MSA 17.455[1] et seq., 17.455[31] et seq.).

4. LABOR RELATIONS — PUBLIC EMPLOYEES — COLLECTIVE BARGAIN-ING.

The public employees relations act does not compel collective bargaining over every subject proposed by a party; some subjects may be beyond the scope of collective bargaining under the act because they fall within the powers granted exclusively to the employer by the Michigan Constitution.

5. COUNTIES — BUDGETS — COLLECTIVE BARGAINING.

   The discretionary authority to determine a county budget cannot be limited by a collective-bargaining agreement.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY M. J. KELLY, J.

6. LABOR RELATIONS — POLICE AND FIRE DEPARTMENTS — COMPULSORY ARBITRATION — LAYOFFS.

   *A court, in light of the statutory prohibition against changing existing wages, hours, or other conditions of employment during the pendency of compulsory arbitration, may properly grant a permanent injunction to prevent the laying off of a county sheriff's road patrol personnel for economic reasons while a labor dispute is being arbitrated (MCL 423.243; MSA 17.455[43]).*

7. LABOR RELATIONS — COUNTIES — COUNTY EXECUTIVES.

   *A county executive may, on behalf of the county board of commissioners and the county, voluntarily limit, through the process of collective bargaining, any right to terminate county employees for economic reasons.*

8. LABOR RELATIONS — POLICE AND FIRE DEPARTMENTS — COMPULSORY ARBITRATION — CIRCUIT COURTS.

   *A dispute which arises during compulsory arbitration between police or firemen and their employers as to whether there has been a unilateral change in an employment condition during the pendency of the arbitration proceedings may be resolved in circuit court.*

*Law Offices of Barry L. Howard* (by *Barry L. Howard* and *Frank A. Guido),* for plaintiffs.

*The Fishman Group* (by *Steven J. Fishman* and *Malcolm D. Brown),* for Oakland County.

*Oakland County Civil Counsel* (by *Jack C. Hays),* for Daniel T. Murphy, C. Hugh Dohany, and Oakland County Board of Commissioners.

Before: BRONSON, P.J., and M. J. KELLY and R. S. HOFFIUS,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

BRONSON, P.J. Plaintiffs, Police Officers Association of Michigan (POAM) and Johannes Spreen, Oakland County Sheriff, appeal as of right from an order dismissing their complaint against defendants, Oakland County, Oakland County Board of Commissioners, Daniel T. Murphy, Oakland County Executive, and C. Hugh Dohany, Oakland County Treasurer.

Plaintiff POAM, as the union representing the employees of the Oakland County Sheriff's Department, entered into a collective-bargaining agreement with the Oakland County Sheriff and the Oakland County Board of Commissioners on January 23, 1981. The agreement was to remain in effect until December 31, 1981, and thereafter while a new agreement was being negotiated. The agreement incorporated the Oakland County Merit System Rules. Rule 9 provides for separation from county employment because of curtailment of work or lack of funds. The rule defines "curtailment of work" as:

"[A] situation in which the need for the employee's services are no longer required because the county no longer performs the function to which the employee was assigned, to the degree that the same number of employees are needed."

and defines "lack of funds" as:

"[A] situation in which the county is forced to drop positions because it does not have the funds to pay the salaries of the incumbent employees."

On May 20, 1982, after POAM and the employer had negotiated unsuccessfully for a new agreement, plaintiff POAM filed an amended petition for compulsory arbitration with the Michigan Em-

ployment Relations Commission (MERC) pursuant
to MCL 423.231 *et seq.;* MSA 17.455(31) *et seq.*

On December 2, 1982, defendant Oakland
County Board of Commissioners passed the 1983
General Appropriations Act. The 1983 budget re-
duced the number of road patrol positions in the
sheriff's department from 45 to 25. Plaintiff
POAM, later joined in the action by the Oakland
County Sheriff, Johannes Spreen, filed its original
complaint in the instant suit, alleging that defen-
dants had unilaterally altered the conditions of
employment set forth in the rules of the Oakland
County Merit System in violation of MCL 423.24;
MSA 17.454(26). Plaintiff POAM requested that
defendants be temporarily and permanently en-
joined from effecting the scheduled layoffs on Jan-
uary 1, 1983, and sought a declaratory judgment
as to whether the layoffs violated the Oakland
County Merit System Rule 9.

The trial court denied plaintiff POAM's request
for a permanent injunction. The parties agreed
that the case could be resolved on a stipulation of
facts. Following oral argument, the trial court
dismissed plaintiff POAM's amended complaint,
ruling that neither the state constitution, the ap-
plicable statute, the collective-bargaining agree-
ment, nor the pending arbitration compelled the
board of commissioners to appropriate funds for
the road patrol.

The electorate of Oakland County has adopted
the optional unified form of county government
and has chosen to lodge administrative and execu-
tive power in an elected county executive pursuant
to MCL 45.551 *et seq.;* MSA 5.302(51) *et seq.*
Under MCL 45.558; MSA 5.302(58), the annual
county budget is initially prepared by the county
executive and submitted to the board of commis-

sioners for consideration. MCL 45.556; MSA 5.302(56) authorizes the board of commissioners to adopt a county budget and work program. The county executive may veto the board's action, subject to the board's authority to override the veto by a two-thirds vote of all board members. MCL 45.561; MSA 5.302(61).

The separation of powers doctrine mandates the preservation of the legislative, executive, and judicial branches of government as entities distinct from one another. Const 1963, art 3, § 2. The power to appropriate money is exclusively legislative in character. OAG 1979-1980, No 5816, p 1079. This Court has consistently refrained from interfering with a legislative body's exercise of discretion in appropriating funds. *Wayne County Prosecutor v Wayne County Bd of Comm'rs,* 93 Mich App 114, 121; 286 NW2d 62 (1979); *Wayne County Sheriff v Wayne County Bd of Comm'rs* (Court of Appeals opinion, docket no. 60933, decided November 22, 1983 [unreported]). In order to warrant judicial intrusion, the legislative action must be "so capricious or arbitrary as to evidence a total failure to exercise discretion". 93 Mich App 122-123; *Veldman v Grand Rapids,* 275 Mich 100, 113; 265 NW 790 (1936).

In ruling that the decision to eliminate 20 road patrol positions was within the discretion of the board of commissioners, the trial court stated:

"Now, they also eliminated these particular, in quotes, *[sic]* road patrol positions, and there's no question under the case law, statutory law, and not included in the constitutional duties of the sheriff, there is no mandate for road patrol. It's absolutely a permissive—perfectly lawful—but permissive function of the sheriff and its *[sic]* solely within the legislative discretion of

the board of commissioners whether they want to un-
dertake that or not."

The statement is correct, but begs the question.
Just because the board had discretion to eliminate
the road patrol does not ipso facto mean that the
board exercised its discretion without abuse. Fur-
thermore, if the original appropriations decision
was an abuse of discretion, the board could not
remedy such abuse merely by complying with the
Merit System Rules and the collective-bargaining
agreement in determining which deputies would
be laid off and in notifying the deputies.

In *Wayne County Sheriff v Wayne County Bd of
Comm'rs, supra,* we were able to conclude that
that board had not abused its discretion because
the record was replete with evidence of the deci-
sion-making process undertaken by the board prior
to eliminating the sheriff's road patrol. We were
unable to find any indication that the elimination
was motivated by malice, ill will, or bad faith on
the part of the board.

In the instant case, plaintiff POAM alleged that
the road patrol positions were eliminated in retali-
ation for the position taken by POAM in a pending
labor dispute. Such a reason would not be a legiti-
mate basis for a decision to eliminate the road
patrol positions; therefore, plaintiff's allegation, if
proved, would be evidence of an arbitrary or capri-
cious exercise of discretion. We do not intimate
that this was necessarily the basis for the board's
decision. We do find, however, that the trial court,
by terminating its inquiry with a finding that the
board had discretion to eliminate the positions,
failed to address the pertinent issue, *i.e.,* whether
the board abused its discretion. We, therefore,
remand this case to the trial court to determine
whether the board of commissioners abused its

discretion when it eliminated the 20 road patrol positions. Such a determination may require the taking of additional evidence.

We now turn to a second issue raised by plaintiffs. Plaintiffs argue that defendants were prohibited from effecting the layoffs during the pendency of the compulsory arbitration proceedings instituted by plaintiffs. MCL 423.243; MSA 17.455(43) provides:

"During the pendency of proceedings before the arbitration panel, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other but a party may so consent without prejudice to his rights or position under this act."

In *Local 1277, Metropolitan Council No 23, AFSCME, AFL-CIO v City of Center Line*, 414 Mich 642, 654; 327 NW2d 822 (1982),[1] the Supreme Court held that compulsory arbitration extends only to mandatory subjects of collective bargaining under MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.* (PERA).

While acknowledging PERA as the dominant law regulating public employee relations, *Rockwell v Crestwood School Dist Bd of Ed*, 393 Mich 616, 629; 227 NW2d 736 (1975), our courts have recognized that PERA does not compel bargaining over every subject proposed by a party. Some subjects may be "beyond the scope of collective bargaining

[1] *Local 1277 v City of Center Line, supra*, should not be confused with *Metropolitan Council No 23, Local 1277, AFSCME, AFL-CIO v City of Center Line*, 78 Mich App 281; 259 NW2d 460 (1977), lv den 402 Mich 814 (1977). We do not cite the Supreme Court case in the Local 1277 proceedings because of any supposed "connection" between the Court of Appeals case and the Supreme Court case. Were the Supreme Court case totally unrelated to the Court of Appeals case, we would nonetheless use it as the basis for our analysis in the *instant* case.

under PERA because they fall within the powers granted exclusively to the employer by the Michigan Constitution". *National Union of Police Officers Local 502-M, AFL-CIO v Wayne County Bd of Comm'rs,* 93 Mich App 76, 87; 286 NW2d 242 (1979).[2]

In *City of Center Line, supra,* the police officers' union had requested in its collective-bargaining agreement with defendant city a clause mandating that any layoff of police officers because of a general lack of funds could be made only in conjunction with layoffs and cutbacks in other city departments. In a unanimous opinion, the Supreme Court held that the initial decision to lay off employees is within the scope of the city's management prerogative and, therefore, was not a mandatory subject of bargaining. The Court stated:

"The [requested layoff provision] unduly restricts the city in its ability to make decisions regarding the size and scope of municipal services. As the city argued in both oral argument and its brief, the city no longer would be able to base its decision on factors such as need, available revenues, or public interest. The decision regarding layoffs could only be based on the level of services in other departments if the layoff clause was to be upheld. This severely restricts the city in its ability to function effectively and poses serious questions with regard to political accountability for such decisions." 414 Mich 660.

In the instant case, Merit System Rule 9, incorporated into the collective-bargaining agreement, provided for layoffs in the event of a lack of funds. Although defendant board of commissioners failed

---

[2] We note, however, that the Supreme Court has rejected the idea that an institution which derives its powers from the constitution is insulated from the collective-bargaining obligation of PERA. *Central Michigan Univ Faculty Ass'n v Central Michigan Univ,* 404 Mich 268, 279; 273 NW2d 21 (1978), *reh den* 406 Mich 1117 (1979).

to appropriate funds for the eliminated road patrol positions, the board reserved an amount in excess of the cost of the eliminated positions as a contingency fund in the adopted budget. Plaintiffs interpret the definition of "lack of funds" in Rule 9 to mean an "actual" lack of county funds rather than a lack of *appropriated funds.*

Plaintiffs concede that, under the optional unified form of government, defendants board of commissioners and county executive have power to adopt a county budget and allocate county funds to the various county departments. However, under plaintiffs' interpretation of the "lack of funds" provision, the county executive "bargained away" the board of commissioners' exclusive power to allocate funds. Such a contention is a variation of the argument rejected by the Supreme Court in *City of Center Line, supra.*

The discretionary authority to determine a county budget cannot be limited by a collective-bargaining agreement. The Legislature's power to appropriate funds is constitutionally derived. Const 1963, art 4, § 31; art 9, § 17; *Civil Service Comm v Auditor General,* 302 Mich 673, 682-683; 5 NW2d 536 (1942). Under the optional unified form of government statute and pursuant to Const 1963, art 7, § 8, the Legislature granted budget authority to the board of commissioners and the county executive. Implicit in plaintiffs' argument is the premise that under the optional unified form of government statute, the Legislature has authorized the county executive to transfer, through labor negotiations, a portion of the budget authority to a third party, *i.e.,* plaintiffs. We do not believe the statute evinces such an intent. Instead, the statute provides that the county board of commissioners adopts the county budget and the

county executive's input is limited to the initial submission of a proposed budget and the statutory veto power. An attempt by the county executive to otherwise limit the board of commissioners' authority to allocate county funds would infringe upon the Legislature's constitutional authority in these matters.

Michigan courts have adopted a broad and expensive interpretation of what constitutes proper subjects for collective bargaining under PERA. *Local 1383, International Ass'n of Fire Fighters, AFL-CIO v City of Warren,* 411 Mich 642, 655; 311 NW2d 702 (1981). Nonetheless, we conclude that budget appropriations are not a proper subject for collective bargaining. Defendant board of commissioners has authority under its collective-bargaining agreement with plaintiff POAM to lay off road patrol deputies where the county budget failed to appropriate funds for the affected positions. Furthermore, defendant's action was not preempted by the initiation of compulsory arbitration.

Remanded for proceedings in accordance with this opinion. We do not retain jurisdiction.

R. S. Hoffius, J., concurred.


M. J. Kelly, J. *(concurring in part; dissenting in part).* I concur with the majority in concluding that the trial court failed to consider whether the board of commissioners abused its discretion when it eliminated 20[1] road patrol positions. I dissent, however, from the majority's refusal to apply MCL

---

[1] Stipulation of facts no. 18 provides:

"The funds appropriated as reserve for contingency in the board of commissioners' adopted budget for 1983 exceed the cost of the 20 patrol officer and 7 command level positions which were eliminated by the board of commissioners in adopting the budget for 1983." Apparently the seven command level positions are not at issue.

423.243; MSA 17.455(43) as a significant limitation on the scope of the commissioners' discretion.

## I

The trial court in this case ignored the statutory prohibition on unilateral changes in conditions of employment during the pendency of compulsory arbitration proceedings instituted under 1969 PA 312, MCL 423.231 *et seq.;* MSA 17.455(31) *et seq.* The relevant section provides:

"During the pendency of proceedings before the arbitration panel, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other but a party may so consent without prejudice to his rights or position under this act." MCL 423.243; MSA 17.455(43).

Since POAM had filed a petition for compulsory arbitration pursuant to 1969 PA 312 and the parties had stipulated that they were involved in negotiations at the time the positions were eliminated, the board of commissioners was prohibited by statute from laying off sheriff's deputies for reasons other than those provided in the collective-bargaining agreement and in the Oakland County Merit System Rules.[2] Rule 9 limits the commissioners' authority to lay off county employees except for curtailment of work or lack of funds.

Under the majority view, the trial court on remand need only consider whether the commissioners acted arbitrarily or capriciously in terminating the 20 road patrol positions. I believe the issue on remand should be narrower. As I see it, the dispute in this case is whether the commission-

---

[2] Stipulation of facts nos. 10 and 11 include both the agreement and the Merit System Rules.

ers unilaterally changed a condition of employment during arbitration by eliminating county employees for a reason other than not having the funds to pay the salaries of these employees. This view is consistent with that pronounced in *Metropolitan Council No 23, Local 1277, AFSCME, AFL-CIO v City of Center Line,* 78 Mich App 281; 259 NW2d 460 (1977), *lv den* 402 Mich 814 (1977).[3] In that case, which I hereafter refer to as *Center Line #1,* the union's collective-bargaining agreement permitted layoffs only for "lack of work". In light of the statutory prohibition against changing existing wages, hours, or other conditions of employment during the pendency of compulsory arbitration, this Court ruled that the granting of a permanent injunction was proper to prevent the laying off of road patrol personnel for economic reasons while the dispute was being arbitrated.

Contrary to the majority opinion, I find *Local 1277, Metropolitan Council No 23, AFSCME, AFL-CIO v City of Center Line,* 414 Mich 642; 327 NW2d 822 (1982), *(Center Line #2)* inapposite. In that case, the Supreme Court held that a collective-bargaining provision such as the one here, limiting the commissioners' right to terminate employees for economic reasons other than lack of funds, does not constitute a mandatory subject of bargaining and may not, therefore, be incorporated by an arbitration panel into an arbitrated labor agreement by the arbitrator's fiat.

---

[3] This case represents a development which preceded *Local 1277, Metropolitan Council No 23, AFSCME, AFL-CIO v City of Center Line,* 414 Mich 642; 327 NW2d 822 (1982). This Court's decision in 78 Mich App 281 was not appealed to the Supreme Court. Shepard's Michigan Citations signals these cases as connected. It is submitted that different legal principles apply to these connected precedents but that the earlier decision is of paramount importance to the decision of this case. The Supreme Court in *Center Line #2* specifically stated that the decision in *Center Line #1* was not the subject of review. 414 Mich 647.

We are not presented with an arbitrated agreement here. A collectively bargained for agreement was already in effect and the dichotomy between mandatory and permissive subjects of bargaining is thus beside the point. The issue here is one of interpretation and application of a collectively bargained for provision. The board of commissioners was either faced with "a situation in which the county [was] forced to drop positions" for lack of funds or it was not. It seems to me that the board cannot arbitrarily choose not to fund the budget for the affected employment positions simply to create a "lack of funds" which does not otherwise exist. If that were the case, the applicable Oakland County Merit System Rule would mean absolutely nothing.

The majority opinion says that the plaintiffs' position is that the county executive bargained away the commissioners' exclusive power to allocate funds. This is not plaintiffs' position at all. Plaintiff POAM's bargaining agreement is with Oakland County. Under the strong executive form of Oakland County government, Mr. Murphy's office does the bargaining. MCL 45.563(g); MSA 5.302(63)(g). To imply that there are different pockets of power at odds is deceptive. The executive bargains for the county and hence for the commissioners.

I do not agree that in bargaining away the right to lay off employees for economic reasons other than lack of funds the executive, for the commissioners and for the county, bargained away a power reserved to management to allocate funds. If this were true, the executive would also be prohibited from bargaining away the county's right to unilaterally reduce employee wages since such a limitation would similarly intrude upon the

commissioners' "exclusive" right to fix wages. I believe that it is entirely permissible for the county executive on behalf of the commissioners and the county to, through the process of collective bargaining, voluntarily limit any right to terminate employees for economic reasons.

## II

As noted by the majority, the 1980-1981[4] collective-bargaining agreement between POAM and the Oakland County Commissioners provides for separation from county employment because of curtailment of work or lack of funds. There is no indication in the trial transcript or in the parties' stipulation of facts that Oakland County had no need for the services of the road patrol deputies. The apparent basis for defendants' elimination of the road patrol positions was insufficient finances.[5] The parties, however, stipulated that the amount reserved as a contingency fund in the board of commissioners' adopted budget exceeded the cost of the positions which were eliminated in the 1983 budget. I would remand this case for a determination by the trial court of whether the commission-

[4] This agreement covered the period January 1, 1980, through December 11, 1981, plus extensions. We are not informed why it was not executed until January 23, 1981.

[5] Plaintiff's brief makes reference to plaintiff's Exhibit No. 11 as follows:

"The Oakland County 1983 Budget contains a surplus approaching $6,000,000.00 (See Plaintiff's Exhibit Number 11). At issue is not the specific level of the surplus, what is at issue is the total disregard by the defendants and the trial court of the contractual mandate that there be no layoffs unless a lack of funds exist."

Since this exhibit is not tied into the stipulation of facts it is not clear whether this is in part or in whole the contingency fund referred to in stipulation of fact no. 18:

"The funds appropriated as reserve for contingency in the board of commissioners' adopted budget for 1983 exceed the cost of the 20 patrol officer and 7 command level positions which were eliminated by the board of commissioners in adopting the budget for 1983."

ers' elimination of the 20 road patrol positions was properly based on lack of funds. While the parties would have the trial court focus on whether "lack of funds" as contained in Rule 9 of the Merit System Rules means "lack of actual funds" or "lack of appropriated funds", I do not perceive the issue in this way. I would order consideration of the county budget as a whole to determine whether the budget as adopted evidences an arbitrary or capricious attempt on the part of the commissioners to eliminate road patrol positions for reasons that are not justified by overall county budgetary needs.

Contrary to defendants' assertion, this case may be properly remanded to the trial court rather than submitted to binding arbitration. In *Center Line #1,* this Court ruled that where the parties are currently in arbitration under 1969 PA 312 and a question arises as to whether there has been a unilateral change in an employment condition, the dispute may be resolved in circuit court:

"While the city's actions may have constituted unfair labor practices under MCL 423.210; MSA 17.455(10), the union did not invoke the provisions of PERA. 1969 PA 312 is separate and distinct from PERA, dealing with the particular problems of labor disputes with policemen and firemen. Because of the need for expediency in dealing with labor problems that might disrupt the crucial services these public employees provide, enforcement of 1969 PA 312 should not be encumbered by the procedure set forth in PERA. Nothing in 1969 PA 312 or any other statute prevents the judicial enforcement of the provisions of 1969 PA 312, and it was proper for the circuit court to assume jurisdiction over this dispute. Const 1963, art 6, § 13." 78 Mich App 284.

I would thus order remand for a determination

by the circuit court as to whether the commissioners' adopted budget for 1983 satisfied § IV of Rule 9 of the Oakland County Merit System Rules. If there was no "lack of funds" within that definition the trial court should order reinstatement.