OPINION OF THE COURT
John P. Lane, J.
In this CPLR article 78 proceeding, petitioners, the Commissioners of Elections of Erie County, seek an order:
(1) compelling respondents John Greenan, Erie County Commissioner of Personnel, Joel A. Giambra, Erie County Executive, the County of Erie and the Erie County Legislature to provide adequate funding to conduct the business of the Board of Elections in 2005;
(2) prohibiting respondents from acting contrary to the federal and state constitutions and statutes affecting the duties of the Board of Elections and the Commissioners;
(3) compelling respondents County of Erie, the County Executive, and the County Legislature to provide adequate funding for the Board at a “minimal level of serviceability”;
(4) compelling respondent Commissioner of Personnel to implement personnel decisions made by the Board of Elections within appropriated funds pursuant to Election Law § 3-300; and
(5) awarding attorney’s fees.
Respondents move pursuant to CPLR 3211 to dismiss the petition on the following grounds:
(1) the action of the Erie County Legislature may not be challenged by an article 78 proceeding;
(2) the proceeding should not be converted to an action for a declaratory judgment as it does not present a justiciable controversy and the court should exercise its discretion to deny declaratory relief;
(3) the petition fails to state a cause of action against respondent Greenan;
*612 (4) respondents have not violated this court’s order in an earlier proceeding compelling the County Legislature to restore four positions to the Board of Elections; and
(5) it is within the authority of the government of Erie County to impose a hiring freeze and abolish positions of employment created and maintained by the adoption of an amended budget. The parties have stipulated that there are no issues of fact raised by the papers before the court and respondents’ motion is expanded to seek summary judgment dismissing the petition as well as judgment pursuant to CPLR 3211.
Petitioners’ amended petition challenges the following actions of the County Legislature. On February 14 and 17, 2005, acting pursuant to Erie County Charter § 1806, the Legislature adopted resolutions amending the 2005 Corrected Budget, adopted on January 5, 2005, thereby reducing appropriations for the Board of Elections.[1] On June 14 the County Legislature adopted a further resolution resolving that “effective immediately, any positions in the Erie County government that become vacant due to resignation, layoff, termination, retirement or death, shall be immediately and permanently deleted from the County budget,” and also permanently deleted any then vacant positions in Erie County government.[2] The amended petition alleges that these actions rendered petitioners unable to carry out their duties under the Election Law and challenges the resolutions on grounds of legislative equivalency.
Adoption of an annual budget and postadoption corrections and amendments to budgets are legislative functions of the Erie County Legislature. “A CPLR article 78 proceeding is not the proper vehicle to review the validity of legislative action” (Matter of Swanick v Erie County Legislature, 103 AD2d 1036, 1037 [1984], appeal dismissed 64 NY2d 1039 [1985]; see also Press v County of Monroe, 50 NY2d 695, 702 [1980]). Mandamus is avail *613 able to compel a governmental entity to perform a ministerial duty, but does not lie to compel an act that involves the exercise of legislative discretion (see generally New York Civ. Liberties Union v State of New York, 4 NY3d 175, 184 [2005]; Matter of Brusco v Braun, 84 NY2d 674, 679 [1994]; Matter of County of Fulton v State of New York, 76 NY2d 675, 678 [1990]). Since the record is sufficient for that purpose, this proceeding is converted to an action for a declaratory judgment (see Swanick). Petitioners have standing to prosecute their claims in such an action as the combined effect of the action taken by the Legislature has usurped their authority to “have complete and exclusive control in hiring and terminating” their employees (Matter of Gimbrone v Stevenson, 8 AD3d 959, 961 [2004], appeal withdrawn 3 NY3d 738 [2004]; Matter of Mohr v Giambra, 7 Misc 3d 723 [2005] [Mohr 77]) within the amounts appropriated therefor (see Election Law § 3-300). Moreover, the likelihood that the hiring freeze imposed by the County Legislature will result in political imbalance on the Board of Elections firmly establishes petitioners’ standing to seek a declaratory judgment (see Matter of Graziano v County of Albany, 3 NY3d 475 [2004]). Subject matter jurisdiction of the controversy exists.
Petitioners’ reliance upon Matter of Gallagher v Regan (42 NY2d 230 [1977]) and the doctrine of legislative equivalency is misplaced. The doctrine of legislative equivalency is a rule of logic and statutory construction rather than a rule of constitutional law. In Gallagher, the Court held that a position created by the Erie County Charter and Administrative Code could not be abolished by a mere budgetary resolution striking the item of appropriation for that position. The rationale was that, if allowed, this would have amounted to an amendment of the Charter and Code by abolishing the offices therein created, an outcome that required a legislative act of equal dignity and import (see Gallagher at 234). Here, the February resolutions do not affect positions created by the Charter or the Administrative Code. Rather, they modify the county budget in a manner clearly authorized by section 1806 of the Charter, which was approved by referendum pursuant to the County Charter Law (see Municipal Home Rule Law § 33).
Erie County Charter § 1806 provides in part as follows:
“If at any time during the fiscal year it appears that the revenues available will be insufficient to meet the amounts appropriated, the county executive shall report to the county legislature without delay *614 the estimated amount of the deficit, remedial action taken by him, and his recommendations as to further action. The county legislature shall take such action as it deems necessary to prevent or minimize any deficit. For that purpose it may by resolution reduce one or more appropriations; but no appropriation for debt service may be reduced, and no appropriation may be reduced by more than the unencumbered balance thereof or below any amount required by law to be appropriated.”
The inability of the County Legislature to muster the votes necessary to carry out the plan to increase the County’s share of sales tax to provide revenues anticipated in the Corrected Budget caused the County Executive and the County Legislature to take action under section 1806. The authority to reduce one or more budget appropriations when a severe deficit is in sight does not require reference to line items for particular positions. Unlike the procedure required by Charter § 1803 (A), authorizing the County Legislature to strike or reduce appropriations in the initial budget adoption process on an item-by-item basis, section 1806 clearly permits the County Legislature, when faced with a potential deficit, to reduce appropriations by resolution without the need to consider item-by-item reductions.
Disputes concerning the allocation of municipal resources and budget priorities are not appropriate for resolution by the judiciary (see Jones v Beame, 45 NY2d 402, 407 [1978]). “[C]ourts cannot and will not intervene in the budget process if doing so requires them to substitute their judgment on matters of [legislative] discretion” (Matter of Korn v Gulotta, 72 NY2d 363, 369 [1988]).
“A justiciable controversy is one solvable by a court rather than some other forum and, with regard to the separation of powers doctrine, it has to do with whether a matter is resolvable by the judicial branch of government by way of interpreting or enforcing a statutory mandate or by the executive and/or legislative branches in the exercise of their purely political function.” (Matter of Schulz v Silver, 212 AD2d 293, 295 [1995] [citation omitted], appeal dismissed 86 NY2d 835 [1995], lv dismissed in part and denied in part 87 NY2d 916 [1996].)
“Justiciability . . . embraces the constitutional doctrine of separation of powers and refers, in the broad sense, to matters resolvable by the judicial branch *615 of government as opposed to the executive or legislative branches or their extensions. Broad policy choices, which involve the ordering of priorities and the allocation of finite resources, are matters for the executive and legislative branches of government and the place to question their wisdom lies not in the courts but elsewhere” (Jiggetts v Grinker, 75 NY2d 411, 415 [1990] [citations omitted]).
When, as here, a municipality is faced with a severe fiscal crisis, decisions made by appropriate authorities as a matter of legislative and administrative policy are not the proper subject of judicial intervention (see Jones). Thus, respondents correctly maintain that the claims made by petitioners concerning the reduction in the amounts appropriated for their operations are nonjusticiable (id.). Petitioners’ suggestion that this court adopt a “minimum serviceability” doctrine, pointing to Wayne County Prosecutor v Wayne County Bd. of Commrs. (93 Mich App 114, 286 NW2d 62 [1979]), is rejected. It is doubtful that Michigan has adopted a rule permitting judicial review of legislative budget enactments against a minimum level of serviceability standard (see e.g. Wayne County Sheriff v Wayne County Bd. of Commrs., 148 Mich App 702, 385 NW2d 267 [1983]). In any event, such a concept is contrary to established law in New York and will not be applied here.
Petitioners’ argument that the action of the County Legislature in February reducing the appropriation for the Board of Elections was contrary to this court’s ruling in Mohr I is mistaken. There, this court determined that the termination of four named Republican employees of the Board of Elections by line item entries in the 2005 Budget was contrary to the provisions of article II, § 8 of the New York Constitution and Election Law § 3-300, which require equal representation of the two major political parties and empower the Board to appoint, and at its pleasure remove, its employees, prescribe their duties, fix their number, titles and rank and establish their salaries within the total funds appropriated by the County Legislature. That determination did not limit the power of the County Legislature to reduce appropriations for the Board of Elections in the face of a severe budget deficit. The fact that the amount finally appropriated for board operations in 2005 is substantially below the amounts provided in earlier years does not change that outcome. Nor does the fact that the property tax levy for 2005 permitted the County to recover almost $4 million for election services provided to its towns and cities in 2003 (see Election Law §§ 4-136, 4-138).
*616 Finally, petitioners challenge the hiring freeze resolution adopted by the Legislature on June 14. When it appears that revenues in the fiscal year will be insufficient to meet the amount appropriated, the Erie County Legislature may by resolution reduce one or more appropriations (County Charter § 1806). It also has broad power to “take such action as it deems necessary to prevent or minimize any deficit” (id.). Section 3.09 (e) of the Erie County Administrative Code provides that except in the legislative or judicial branch, no appointive county office or position that'becomes vacant shall be filled until the County Executive certifies in writing to the County Legislature the necessity to do so. Whether it is inconsistent with this rule to impose a blanket hiring freeze, rather than reduce appropriations, need not be decided here for the reasons that follow.
Article II, § 8 of the New York Constitution requires that all laws creating, regulating or affecting boards or officers charged with the duty of qualifying voters, or of distributing ballots to voters or otherwise conducting and regulating elections “shall secure equal representation of the two political parties which, at the general election next preceding that for which such boards or officers are to serve, cast the highest and the next highest number of votes,” that is, the Republican and Democratic parties. Election Law § 3-300 provides that each county board of elections shall appoint, and at its pleasure remove, clerks, technicians, custodians and other employees, fix their number, prescribe their duties, fix their titles and rank and establish their salaries within the amounts appropriated therefor by the local legislative body and shall secure in the appointment of employees of the board of elections equal representation of the major political parties. The language of the hiring freeze resolution does not affect the amounts appropriated for board operations. Rather, it purports to eliminate positions fixed by the Board pursuant to Election Law § 3-300 (see Mohr II). The effect of the hiring freeze resolution, if applied to the Board of Elections, would be inconsistent with and undermine petitioners’ constitutional and statutory authority (see Graziano; Gimbrone; Mohr II). Furthermore, it would create intermittent political imbalance in the board staff (see Graziano, 3 NY3d at 480 [bipartisanship is an important component of our democratic process for its purpose is to ensure fair elections]) and compel petitioners to terminate an additional employee whenever a vacancy occurs in order to restore required political balance, thus doubling the effect of the hiring freeze resolution. It follows also that Erie *617 County Administrative Code § 3.09 (e) cannot be applied to the Board of Elections.
Judgment shall be entered declaring that the June 14 hiring freeze resolution adopted by the County Legislature as to petitioners, the Board of Elections and its employees, is null and void and shall not be enforced against them. Respondents shall recognize all appointments of employees made by petitioners within the funds appropriated in the Corrected Budget as amended by the resolutions adopted in February. The judgment shall further declare that the February resolutions of the County Legislature reducing the appropriations for the Board’s operations are lawful. Respondents’ motions are otherwise without merit and are denied. Petitioners may pursue their claim for attorney’s fees by separate motion.

. The 2005 Corrected Budget was adopted following a decision and order by this court holding in part that a provision in the Adopted Budget terminating positions held by four Republican election clerks was null and void (Mohr v Giambra, Sup Ct, Erie County, Dec. 31, 2004, Lane, J., Index No. 12707/04 [Mohr I]).

. On June 23, 2005, the County Legislature further resolved that all county officials and departments “shall implement a spending cap” on all accounts to 75% of the amounts appropriated by the department in the 2005 Erie County Adopted and Amended Budget. Respondents have represented to the court that any department that had already experienced a cut of 25% was unaffected by the June 23 resolution. Since cuts to the Board of Elections’ 2005 budget appropriation brought about by the February 14 and 17 resolutions exceeded 25% the Board is not affected by the June 23 resolution.